[Filed January 11, 1892.]

## EBEN P. PARKER v. C. R. THOMSON ET AL.

MISTAKE—DESCRIPTION OF PROPERTY—VALID CONTRACT.— In a suit to correct an alleged mistake in a contract for the sale of land whereby some portion of the real property that should have been included was omitted, the complaint should not only set forth the very words constituting a true description of the property omitted, but should also state the true consideration of the contract sought to be reformed, so that the court may see that the case is one calling for the interposition of equity.

Clatsop county: FRANK J. TAYLOR, Judge.

Plaintiff appeals. Affirmed.

The amended complaint alleges, "that on and prior to the thirtieth of August, 1878, one Thomas Benton Morrison was the owner in fee simple and in possession of all that parcel of land in the county of Clatsop, state of Oregon, being in sections 15 and 16, of township 6 north, range 10 west, Willamette Meridian, known as the J. A. Cook donation land claim, and lying west of the east bank of Ohanna creek, and also of all the tide land west and in front of said donation land claim along the Necanicum river, containing four acres, more or less; and the said Morrison was then and there the owner of that portion of the bed and banks of the said creek, called and known as the Ohanna creek, lying and being in the easterly portion of the said J. A. Cook donation land claim, and flowing into the said Necanicum river near its mouth, where it enters the Pacific ocean;

that said Necanicum river (also called a creek) was a mean-dered stream, and the said Ohanna creek was an unnavi-gable stream, and both were then and still are tidal streams, having banks between ordinary high- and low-water mark.

The said stream with the bed, banks, tide lands, and waters thereof as necessary thereto, were then and there valuable for fishing grounds; and at and prior to August 30, 1878, the said Thomas Benton Morrison had established a fishery upon said streams, embracing as fishing grounds thereof all the bed, banks, and waters of said Ohanna creek, and the said tide lands and waters of the said Necan-icum river to the channel thereof lying on the west of said J. A. Cook donation land claim, and between the westerly extension of the north and south lines of said claim, and including as a part of said fishery a tract of one acre of land adjoining the banks of said Necanicum river in said Cook claim, and north of and adjoining an eighteen-acre tract of land the said Morrison had theretofore sold to Mrs. Cloutrie, on which said acre tract the fishing and packing house of said fishery had been then and theretofore erected; that on said date, the said Morrison, for a valuable consid-eration, sold to this plaintiff an undivided one-half interest in and to the said fishery and fishing grounds of said Necanicum river and of said Ohanna creek, and also including in said sale to this plaintiff a right of way over said donation land claim from said fishing house to said Ohanna creek; and on the same day the said Morrison undertook to convey the said described property to this plaintiff by a deed duly executed with the following description, to wit: 'The undivided one-half interest in one acre of land situated on the east side, or easterly side, of said Necanicum creek north of the Cloutrie eighteen-acre tract, also the undivided half interest in and to the use and the right to use the fishing grounds and privileges, ease-ments, and appurtenances thereof forever, situate in, upon, or adjacent to the Necanicum creek, and the other waters, as the Ohanna creek, flowing into the same, and also in or

upon or adjacent to the sea beach or shore at or about the mouth of said creek or either of them'; also, 'with right of way from the fishing house to the public road over our other land'; and also as follows: 'and all the stock and implements of said fishing station and easements, privileges, and appurtenances pertaining to said fishery as aforesaid'; which said description was then and there supposed, both by said grantee and by said grantor, to convey an undivided half interest in all of said tide lands on the said Necanicum, and also in all of said bed and banks of said Ohanna creek included as aforesaid in said fishing grounds; and it was then and there mutually intended between said grantee and grantor to convey to said grantee by said deed the said described premises so sold and agreed to be conveyed as aforesaid, but by their mutual mistake the description of said premises in said deed was made in the language hereinbefore stated. And thereupon and on said date this plaintiff went into possession of said fishing grounds as the owner of said undivided half thereof, and said deed was duly recorded; that on January 18, 1879, the said Morrison sold and conveyed to one J. T. Mulkey all of his remaining interest in said Cook donation land claim lying west of the high-water line on the east bank of said Ohanna creek and in said tide lands on Necanicum creek, but reserving from such deed the said one-half interest in said one-acre tract, and the half interest in the fishery sold to E. P. Parker, the plaintiff herein, which said fishery was the same fishing grounds as hereinbefore described and that had been so sold to the plaintiff, all of which was then and there well known to said J. T. Mulkey; and said Mulkey then and there went into the possession of the same with the plaintiff. Thereafter, and prior to the year 1884, said Mulkey and this plaintiff removed their said fishing house to another acre near said Cook's donation land claim, acquired by them together as equal owners and adjacent to said Necanicum."

Then follows a long allegation in relation to an agreement between the plaintiff and one J. T. Mulkey to divide their interests in said fishery and fishing grounds, and it was agreed that the plaintiff should relinquish to Mulkey his right in said two one-acre tracts, and said Mulkey was to convey to plaintiff three lots in Ocean Grove addition, near Necanicum river, to be selected by plaintiff, and also the said fishing and packing house, and all of Mulkey's interest in said fishing grounds and fishery, hereinbefore particularly described. On said day, one A. F. Johns, acting as agent for said Mulkey, and having his power of attorney to convey any and all of said lands and fishing grounds and interest above referred to, having found a purchaser for one of said one-acre tracts, insisted upon an immediate deed from this plaintiff in pursuance of said agreement for a division between the plaintiff and Mulkey, and promised to convey to this plaintiff all of said lands and fishing grounds so owned by said Mulkey and agreed to be conveyed to this plaintiff so soon as said three lots should be selected by this plaintiff; that plaintiff conveyed to said Mulkey, as requested as aforesaid, and Mulkey relinquished to this plaintiff the exclusive possession of said fishing ground aforesaid, and this plaintiff then and there took possession of the same exclusively; that on February 23, 1884, plaintiff selected said three lots in Ocean Grove addition, and requested said Johns, as attorney in fact and as agent for said Mulkey, to execute to the plaintiff a deed for the same, and for said fishing grounds so sold by said Mulkey to the plaintiff, which the said Johns agreed to do, and the plaintiff supposed said deed had been duly executed for all of said property, until about a year afterwards he discovered and now alleges that said Johns, as attorney in fact aforesaid, had executed a deed and filed it for record on March 4, 1884, in favor of plaintiff, containing only the three lots in Ocean Grove addition, and had failed to convey the said other property so agreed to be conveyed to this plaintiff by said J. T. Mulkey; that on July 19, 1884, the

said Mulkey and wife conveyed to said A. F. Johns the said real estate so purchased by him of said Morrison, without consideration, but nominally for the sum of two thousand dollars, paid to him, and also included in said conveyance all of the fishing grounds so sold as aforesaid to this plaintiff by said T. B. Morrison. Said Johns took said property with full knowledge of the rights of this plaintiff, and also took the same in trust for said Mulkey for the purpose of raising money for said Mulkey upon said lands; that said Johns and his wife, pursuant to said trust and for the purpose of raising money upon said lands, mortgaged said lands to one J. B. Harris, a banker of Eugene, Oregon, executing in his favor, on May 21, 1885, a deed of conveyance for all of said property for the nominal consideration of two thousand dollars, but in fact to operate as a mortgage and as security for the money loaned; that on July 24, 1886, said Harris having been paid, for the nominal consideration of one dollar, but without any consideration in fact, executed a deed for all of said property to J. T. Mulkey and his wife, Hester A. Mulkey; that on November 24, 1888, said Hester A. Mulkey died, leaving several children as her heirs at law, all of lawful age; and thereafter and prior to said date the said J. T. Mulkey and said heirs executed to the defendant Noland a power of attorney authorizing him to convey in language following, and not otherwise, to-wit: "To grant, bargain, sell, and convey all rights, title, interest, and estate which we have in all lands, tenements, and hereditaments, situated in township 6 north, range 10 west, in Clatsop county, Oregon, and also all lands which we have acquired as heirs at law of the late Hester A. Mulkey," which power of attorney was for the purpose of raising four thousand dollars or other sum of money for the said Mulkey upon the said property; that thereafter, and on said twenty-fourth day of November, 1888, the said George Noland, as attorney in fact for J. T. Mulkey and the said heirs of the said Hester A. Mulkey, and having notice through the personal importunity of this plaintiff, that this plaintiff claimed rights in

said fishing grounds besides those of record, and being fully put upon inquiry as to the equitable rights of the plaintiff, made and entered into an agreement with the said C. R. Thomson, whereby the said real estate, and property rights, including all the rights of this plaintiff hereinbefore described, should be conveyed to said C. R. Thomson by deed, but in trust for said J. T. Mulkey, to raise for him out of the sales of parcels of said land a certain sum of money, to be paid over to said J. T. Mulkey, and to hold the balance of said property remaining unsold for the joint and equal use and benefit of himself and the said George Noland. Facts are also alleged tending to charge Noland and Thomson with notice of plaintiff's rights, if any, in the property he attempts to describe, and it is also charged that they are fraudulently claiming plaintiff's property.

Plaintiff demands a decree establishing his said contracts of purchase of said described fishing grounds and tide lands and right of way against said defendants, and for a conveyance accordingly to the said described property, and that his title to said property be quieted, and for other relief. The answer denies each material allegation in the complaint.

Much evidence was taken, and the cause having been submitted to the court below, the court found that the plaintiff's allegations were not sustained, and dismissed the suit and entered a decree for costs in favor of the defendants, from which the plaintiff appealed.

*Sidney Dell,* tor Appellant.

*C. R. Thomson,* and *George Noland, in propriis personis.*

STRAHAN, C. J.—Several questions arise upon this appeal, but the discussion of each of them is not deemed essential to a proper disposition of the cause.

The equity upon which the plaintiff proceeds is the alleged mistakes mentioned in the amended complaint. It may be seriously questioned whether or not the property is sufficiently described, which it is alleged was omitted

through mistake.   In such case, it is not sufficient to allege
the mistake, and then to allege that by reason thereof a
parcel of property not specifically described was omitted.
The very descriptive words or the correct description of
the property omitted through mistake should be alleged.
(*Hyland* v. *Hyland*, 19 Or. 51.)   But waiving any objection
of this nature, I think where a party invokes the aid of
equity to correct an alleged mistake, he ought to show that
the contract which he seeks to reform was made upon a
valuable consideration, by alleging what the true consider-
ation was, in order that the court might know whether or
not the consideration was in fact valuable and a sufficient
foundation for the equity which the party is seeking to
enforce.   But this objection was not specially insisted upon
at the argument, and may be passed without further
mention.

The real difficulty with which the appellant has to con-
tend, arises out of the evidence.   Looking at the evidence
offered on the part of the plaintiff only, it is lacking in that
precision, accuracy, and definiteness necessary to enable
the court to make the decree which he seeks.   The question
whether there was a mistake or not, is left in doubt.   (2 Pom.
Eq. § 862.)   Then, if there were some mistake or inaccuracy
in the deed, its nature or extent is not apparent, nor is it
in any manner made plain to the court by the evidence
what were the descriptive words omitted from the deed
through the alleged mistake.   To say that he was to have
a mile of the tide land or fishing grounds on Ohanna or
Necanicum creek, is not sufficient.   The plaintiff in his own
evidence does not concede there was any mistake, but only
that he was lately advised by his counsel that there was.
After a very careful consideration of the evidence, I am
unable to reach any other or different conclusion from that
found by the court below.   The plaintiff was bound to prove
the alleged mistake by a preponderance of the evidence,
and in this he has signally failed.

XXI OR.—34.

There was considerable comment at the argument as to the meaning of the term fishing grounds, used in Morrison's deed to the plaintiff, offered in evidence. The construction of that deed is not necessarily involved in this case, nor can the court properly construe it at this time so as to affect the rights of the parties. Whether or not extrinsic evidence is admissible to apply these words to the thing granted, was not presented, nor was any evidence submitted on that subject; but standing alone and unaided by extrinsic evidence, it is manifest to us that those words can have no such extensive signification as was suggested by the appellant's counsel. The Century Dictionary, title, Fishing-banks, defines them as a fishing ground of comparative shoal water in the sea. Thus on the Atlantic coast of North America the banks of Newfoundland are famous fishing grounds, and another about twenty miles off Cape May is well known. We have been unable to find any authority, and counsel cited none, holding that the banks of a tide stream or slough or the beach of the ocean have ever been described as fishing grounds.

We find no error in the decree appealed from, and it must be affirmed.