JOSIAH STEPHENS, RESPONDENT, *v.* STEPHEN MURTON AND JAMES WALTON, APPELLANTS.

MISTAKE — DEGREE OF PROOF REQUIRED TO REFORM INSTRUMENT ON THE GROUND OF.—In order to warrant a court of equity in reforming an instrument on the ground of mutual mistake, the proof of the mistake and that it was mutual must be very clear.

PLEADINGS — MUST ALLEGE FRAUD, WHEN.—Where the complaint alleges mistake and asks relief on that ground alone, the court will not reform the instrument on the ground that one of the parties to it was guilty of a fraud in executing it.

COMPLAINT, IN SUIT TO REFORM, MUST SHOW WHAT THE TERMS OF THE TRUE CONTRACT ARE.—The complaint should point out the mistake and show in terms what the tenor of the instrument ought to be. It is not sufficient to say that it was the intention of the parties to make an instrument that would accomplish a certain object and then ask the court to make a writing that will accomplish that object. The complaint should show the true contract in its terms.

APPEAL from Douglas County.

This is a suit to reform and enforce a written instrument. The court below decreed the relief prayed for. The facts are stated in the opinion of the court. The following is the instrument sought to be reformed:

"This agreement made and entered into the twenty-second day of July, 1872, between Josiah Stephens of the first part, and Stephen Murton and James Walton of the second part,

all of Douglas county and state of Oregon, witnesseth: That the said Josiah Stephens for and in consideration of the yearly payment to him by the said Stephen Murton, of the sum of three hundred and thirty-six dollars, gold coin of the United States, hereby rents, leases and lets to the said Murton, all his real estate on Deer Creek, containing one thousand two hundred and forty acres, together with the appurtenances and hereditaments thereto belonging, for the term of five years from the first day of August next, and the said Murton hereby agrees, on or before the expiration of each year, from the said first day of August next, well and truly to pay to the said Josiah Stephens, his agent or order the aforesaid sum of three hundred and thirty-six dollars gold coin of the United States, and to keep all buildings, fences and other improvements in as good repair as he receives them; and so to deliver them up at the expiration of his lease, and, provided the said Stephen Murton shall relinquish the lease at or before the end of the said five years, he shall pay an additional sum of one hundred dollars, gold coin, annually over and above the rent, and the said Josiah Stephens shall, at all times during the continuance of this lease, have full liberty to enter into and upon the land hereinbefore leased, for the purpose of cutting and hauling timber therefrom, and the said Stephen Murton is at liberty to cut and haul timber for sale, on paying to the said Josiah Stephens, the sum of one dollar per còrd for each cord of wood so sold.

" In witness whereof we have hereunto set our hands and seals, the day and year first above written.

" JAMES WALTON,

" STEPHEN MURTON,

" JOSIAH STEVENS."

*James Walton,* the appellant, appeared in his own behalf.

*E. G. Hursh and W. W. Thayer,* for respondent.

By the Court, BOISE, J.:

The facts as proven by the defendants in the case are about as follows: Stephen Murton, one of the respondents,

desired to rent or lease a farm of the plaintiff, and it was agreed by parol between Stephens, Murton and Walton that Stephens should lease the farm to Murton and that Walton would become security for Murton to Stephens for the payment of the rent, and it was agreed that this agreement should be reduced to writing and executed by the parties. Then one Tustan drew up a lease from Stephens to Murton and also an undertaking to be executed by Walton, whereby Walton was to become security to Stephens for the payment of the rent. The parties then met at the store of — Marks in Douglas county, for the purpose of signing the papers and completing the contract of renting which had been before agreed upon.

When Stephens examined the lease and undertaking of Walton to be security for the rent, which undertaking was appended to the lease, he objected to the papers, and desired that Walton should be a party to the lease, and after some talk on that subject, the lease was interlined by the consent of both parties, and the name of James Walton inserted after the name of Murton, as it now appears. There were some other alterations; the rent was raised from three hundred dollars to three hundred and thirty-six dollars per year, and some other alterations which do not affect the questions involved in this suit.

The testimony shows that some hours were spent in discussing and making these alterations. Stephens says that he then thought the instrument as executed by them, bound Walton to pay the rent. He says he does not remember whether he read it as executed or not, but that he thought he understood it and that it bound Walton.

The evidence tends to show that Stephens intended to have Walton bound by this agreement to pay the rent. The evidence also tends to show that Stephens critically examined the instrument before it was interlined and excepted to it and directed the interlinations to be made, and knew what they were, and the tenor of the instrument after it was signed, but he was mistaken as to the obligations it imposed on Walton. That is, he was mistaken as to the legal construction of the instrument. He thought the language of

the instrument would bind Walton to pay the rent, when in fact it did not bind him to pay anything. This then being a misapprehension as to the meaning or construction of a written instrument was a mistake of law.

As to whether the court of equity will interpose to reform and enforce a written instrument when the parties understood its tenor, but were mistaken as to its legal import, there is much conflict of authority; it is a rule *Ignorantia legis non excusat,* (3 Parsons on Contracts, p. 398.) But there are many well considered cases where courts of equity have reformed instruments of this kind. But the view we take of the evidence in this case does not render it material to now determine whether this court will or not in any case reform an agreement in which there is a mistake of the parties as to its legal effect.

While there is evidence sufficient to show that this instrument is not in legal effect what Stephens thought it was, in order that the court shall have authority to reform it, the mistake must be mutual. (1 Story's Eq. Juris., sec. 155.) That is, Stephens and Walton must both have been mistaken as to its legal effect. Walton in his testimony swore that he fully understood the instrument when he signed it, and that there was no mistake on his part. And there is no evidence which shows he was mistaken, and thought himself bound by its terms to pay the rent. In order to warrant a court of equity in reforming an instrument on the ground of mutual mistake, the proof of the mistake must be clear, for its object is to alter a written contract which the parties have deliberately reduced to writing, and which is supposed to contain their mutual understanding of their obligations at the time; and to alter it on the ground of mistake, in effect avoids the rule that no evidence can be admitted to change a written agreement. For this reason courts have required very clear proof of a mutual mistake in written agreements before they have interposed to reform them. (1 Story's Eq. Juris., sec. 157.) The evidence tends to show that Stephens sometime after the execution of the instrument showed it to Williams, one of the witnesses, who expressed doubts as to the validity of the contract to bind Walton, but thought it might

bind him, and it appears that Stephens was, long after the execution of the contract, uncertain as to its construction, but there is no evidence which shows that Walton executed the agreement thinking he was executing one of different import.

It is claimed by the plaintiff's counsel that it is sufficient to show that a particular object was to be accomplished by the instrument to be executed, and that the instrument as executed is insufficient to effectuate the intention of the parties. This proposition may be true, but to sustain the case of the plaintiff it must be shown by the evidence that Stephens thought the instrument bound Walton, and that Walton thought it bound him by its terms as executed. But Walton denies this, and it is not shown that he thought the instrument bound him. It is claimed by respondents that if Walton knew the instrument did not bind him when he signed it, that then he was guilty of fraud, and the instrument should be reformed; whatever may be the law as to reforming instruments when one of the parties has been guilty of fraud, it is not in this case, for the complaint alleges that both parties are mistaken and ask relief on the ground of mistake alone. There is no fraud alleged, and for the court to reform the instrument on that ground would be going outside of the case made by the parties in their pleadings.

There is an objection to the decree reforming this instrument which is urged by the appellant as decisive of this case, and that is, that the complaint does not make a case which entitles the plaintiff to the decree rendered reforming the instrument; that is to say, the complaint does not set out and show in terms what the instrument agreed on should be when reformed. The complaint should point out the mistake, and show in terms what the tenor of the instrument ought to be to express the contract, which by mistake there was a failure to execute. It is not sufficient to say that it was the intention of the parties to make an instrument that would accomplish a certain object, and ask the court to make a writing that will accomplish that object. That would be asking the court to act as scrivener for the parties,

and then to construe the contract favorable to the plaintiff. The complaint should show the true contract in its terms, and ask the court to decree that such was and is the contract agreed on, and then enforce it; in this complaint the plaintiff in effect asks the court to make for the parties such a contract as should make Walton jointly responsible for the rent, and then enforce the same against Walton.

The complaint says on this subject, it was further negotiated and agreed upon by said parties that the defendant, James Walton, should become a joint contractor and obligor with the said Murton, for the performance of the terms aforesaid to be performed by said Stephen Murton, but it does not show what language was intended to be used to express this joint obligation, and the court could not tell whether such an obligation would result from the contract intended to be executed, until the true contract was exhibited to the court for its construction. We think that one alleging a mistake in a written instrument, the mistake being in the wrong use of certain words, or the omission to use them, the words must be set out either in tenor or substance. (1 Abbott's Forms, 586; *Lamoroux* v. *Atlantic Ins. Co.*, 3 Duer, 680.)

From these considerations, we conclude that the decree of the court below must be reversed and the plaintiff's bill dismissed.