[Filed November 7, 1887.]

JOHN FOSTER, APPELLANT, *v.* PETER SCHMEER,
RESPONDENT.

AGENT—CONTRACT BY. —Respondent purchased one half a dairy for two hundred
dollars, and obtained the refusal of the other half at the same price. The appel-
lant told him to go and buy it for him, whereupon respondent bought the other
half of the dairy and a horse included for two hundred dollars. *Held,* that the
respondent having acted as the agent of appellant, the latter was entitled to the
benefit of the purchase, and was the owner of one half the horse.
CONTRACT—PLEADING TO REFORM. —In order to have a contract reformed, the plead-
ing should set out what the contract was as the parties made it, and why its
terms happened to be left out, or how terms not agreed upon came to be inserted.
SAME—PROOF REQUIRED TO REFORM. —In all cases to reform a contract, the court
will require strong and convincing proof of the mistake; but where mistake is
shown, that, if not corrected, would operate to the prejudice of a party, and
which did not occur through the party's carelessness or negligence, the court
will correct it.

APPEAL from Multnomah County.    Modified.

Facts are stated in the opinion.

*Alfred F. Sears, Jr.,* for Appellant.

Proof in order to reform a contract must be free from all doubt.
(3 Greenleaf on Evidence, § 360; 2 Pomeroy's Equity, § 859;
1 Story on Equity Jurisprudence, § 157; *Shiveley* v. *Welch,* 2
Or. 288; *Newsome* v. *Greenwood,* 4 Or. 123; *Remillard* v. *Pres-*

*cott,* 8 Or. 43; *Stephens* v. *Murton,* 6 Or. 196.) These last two cases as to the necessity of a mutuality of mistake. (*Smith* v. *Butler,* 11 Or. 46.)

*Strode & Beach,* for Respondent.

When the deed sought to be reformed shows imperfections, this fact shows that the contract does not express the intention of the parties. (*Ramsey* v. *Loomis,* 6 Or. 374.)

Proof to establish mistake must be clear from mistake. (*Newsome* v. *Greenwood,* 4 Or. 119; *Smith* v. *Butler,* 11 Or. 46; *Hutchinson* v. *Ainsworth* 15 Pa. Rep. 82; *Benson* v. *Maskoe,* 33 N. W. Rep. 38.)

THAYER, J.—This appeal comes here from a decree of the Circuit Court for the county of Multnomah. The appellant commenced a suit in that court against the respondent for an accounting, after a dissolution of copartnership theretofore existing between said parties.

The contract of copartnership is alleged in the complaint to have been under and in pursuance of certain written articles signed by them, and of which the following is a copy:—

"This agreement made this first day of March, 1886, between John Foster and P. Schmeer, both of Multnomah County, Oregon, witnesseth, that the said Foster and Schmeer have hereby agree to carry on and conduct, jointly, a milk or dairy business, in said county, under the following terms and conditions, to wit: The said Schmeer shall supply, at his own cost and expense, one half the number of all the cows necessary for said business; also pay for one half of all the feed that may have to be bought; and for all articles, implements, or supplies required for carrying on the said business. The proceeds of said business shall be divided equally between the said Foster and Schmeer, at such times and in such a manner as to them seems proper. This agreement to be and remain in force for the term of one year, from the first day of March, 1886.

"It is further mutually agreed that upon the termination of this agreement, the said Foster may repurchase the six cows he

sold to said Schmeer at the same price he received from said
Schmeer, to wit, the sum of $180.

"Witness our hands and seals this seventh day of August, 1886.

　　　　　　　　　　"PETER SCHMEER.　　　[SEAL.]
　　　　　　　　　　"JOHN FOSTER.　　　　[SEAL.]
"Witness: A. M. STANSBERRY."

It is further alleged in the complaint that by virtue of said
agreement the parties entered upon said business therein referred
to; that appellant complied with all the conditions of the agree-
ment upon his part; that he had advanced considerable sums
of money and furnished feed on account of the copartnership
business largely in excess of his share as a partner; that said
advances amounted to over $300 more than his proportion, and
that the respondent had refused to enter into any accounting or
repay his shares of the advances.

The respondent filed an answer to the complaint, denying
that he entered into any copartnership with appellant under
said agreement, or any agreement except an agreement in the
dairy and farm business, and denied all the other material allega-
tions of the complaint. And for further answer and counter-
claim alleged that the said agreement was erroneous in that, by
mutual mistake of the parties thereto, they omitted to state, as
was their intention, that the partnership was formed for the pur-
pose of carrying on a farming business as well as a milk business;
that the respondent was to put in the trade and good-will of a
milk business, then possessed by him, together with his knowl-
edge of said business, also the use of three horses, one-half
interest in a milk wagon, and in fifty milk cans; that appellant
was to furnish, as his share of the capital stock, the use of one
half of all the cows needed in said business, the use of his farm
on Columbia Slough, the use of three horses, one-half interest in
a milk wagon, and fifty milk cans, and pay for one half of all
feed and one half of all articles, implements, and supplies that
would have to be bought for carrying on said milk and farming
business; and that in order to make said agreement conform to the
actual intentions of the parties, it was necessary that the same

should be reformed and amended so as to include said matters, and that in pursuance of said last-mentioned agreement the parties entered upon said business. There followed an allegation that the parties, during the continuance of said business, had, down to the 1st of January, 1887, accounted at or near the end of each month for the business transacted during the month preceding, at which time they divided equally between them the excess of cash receipts over the disbursements, and that the last of such settlements was of the business done in the month of December, 1886. Also, of an allegation of the purchase of six cows, by appellant of respondent, for $180, and that he had not paid for them, and that the appellant was in possession of one Buckeye mower of the value of $75, and potatoes of the value of $250, all being the property of the said copartnership; also, that the firm dug a well on appellant's farm, and furnished appliances for drawing water therefrom at the cost of $80, and that appellant refused to pay said money, or account for said partnership property retained by him, and claimed as relief an accounting of said partnership business since December 31, 1886.

No reply to the answer was filed, but a stipulation was entered into by and between their attorneys in their behalf to stand in the place of such reply, and of which the following is a copy: "(1) Admitting that at the expiration of any partnership that existed between the parties, the plaintiff purchased of defendant six cows for the sum of $180, and has paid no part of the said sum. (2) Admitting that plaintiff has in his possession one mower, the property of plaintiff and defendant, of the value of $60. (3) Admitting that plaintiff has possession of a well that cost, with the appliances, $80, one half of which sum was paid by each party. (4) Denying specifically each and every other allegation contained in the answer of defendant herein."

The case was referred to a referee to take the testimony and report it to the court, together with his findings of fact and conclusions of law thereon.

The main controversy in the testimony was, whether the use of the farm was to be included in the partnership business. The appellant seemed inclined to concede that the use of a part of the

farm was to be included, such as the barn, the use of the house and fixtures, the pasture, and he admits that he consented to the raising of grain thereon for the stock, but claims allowance for the hay that was raised and fed to the animals, and emphatically denies that the partnership included the potatoes.    There was also a controversy about a horse that had been bought, worth $25.    I am inclined to think, however, from the testimony, that the horse belonged to the appellant, at least, half of it.    The respondent testified that " he bought out a half interest in Rankin's business for $200, and was to have the other half interest at the same price whenever he wanted it; that he went back to Rankin in about ten days and told him that he would give him $200 for the other half of the business and the mare thrown in; that Mr. Foster told him that he should buy the other half interest for him; that he told Mr. Foster that he could buy it for $200; that that was the agreement when he bought the first half, to pay $200 without the mare for the other half of the business.    Mr. Foster told respondent to buy it for him, and he bought it and paid Rankin $200; that he got the mare also; the mare had no connection with the business."    But the mare did have connection with the business; respondent having been employed by Foster, the appellant, to buy out the half interest from Rankin, appellant was entitled to the benefit of his bargain.    The respondent had no right to speculate in that way when acting for appellant.    The respondent should be charged $12.50 on account of that transaction.

The referee found that the contract set out in the complaint was entered into by mutual mistake of the parties thereto, and that it was erroneous in that it did not provide, as was the intention of the parties, that the partnership was formed for the purpose of carrying on a farming business, as well as a milk business; that the appellant was to put in his share of the capital stock, among other things, the use of his said farm.    He also found that the respondent, since the first day of January, 1887, had collected of the moneys due said firm the sum of $258.55, and paid out on account thereof $156.70, leaving a balance in his hands due the firm of $101.85.    That the appellant purchased

the six cows, as admitted in the stipulation, which constituted the reply, for $180, for which he had not paid respondent. That appellant sold of the property belonging to the partnership 90 sacks of potatoes, for which he received $123.16. Found that the expenses of digging the well, etc., were $80, and that he retained the mowing machine which was $60, and was indebted to the firm in that sum on account thereof; and, as conclusions of law, that the respondent was entitled to a decree reforming the contract of copartnership in accordance with the findings of fact, and for the sum of $260. This was made up, I suppose, by charging the appellant:—

The price of the cows...........................................$180 00
One half of the money for the potatoes..................... 61 58
One half of the expense of the well......................... 40 00
One half value of the mower................................ 30 00

Amounting to...........................................$311 58
And crediting him with one half the $101.85 collected. viz. 50 92

Leaving...............................................$260 66

There are two questions in the case to be considered: *First,* had the respondent a legal right, under the allegations and proofs, to have the contract set out in the complaint reformed; and *second,* if reformed, what changes was the respondent entitled to have made therein?

*Pleading a mistake in contract.* The pleader did not, as I consider, properly allege the facts so as to entitle a party to have, in a strict sense, the contract reformed. He should have alleged more than that it was erroneous in certain particulars, and for what purpose the partnership was formed. He would ordinarily have to set out the terms of the contract as the parties made it; what they each undertook and agreed to do; and show why its terms happened to be left out when it was attempted to be reduced to writing, or how terms not agreed upon came to be inserted.

This case stands, however, upon somewhat different principles. The relief sought here was to supply what the parties through inadvertence and mistake had omitted.

Reforming a written contract on the grounds of mistake is the exercise of the ordinary jurisdiction of a court of equity. That court, however, has always required, in all cases coming under that head, strong and convincing proof of the mistake. It never undertakes to make contracts for parties; it leaves them to do that for themselves; but where it is shown that there has been a mistake, that, if not corrected, it would operate to the prejudice of a party, and that it did not occur through the party's carelessness or negligence, it will correct it.

The parties having deliberately signed an instrument in writing, setting forth what they have agreed upon, cannot, however, expect a court to find that their agreement was different from what they have so declared it to be, without clear, cogent proof that such is the fact, and a reasonable explanation as to how they failed in not having the writing express the true agreement. If this case depended upon the oral proofs alone, I should be of the opinion that the respondent had not shown himself entitled to have the written agreement reformed. But an inspection of the agreement shows it to be incomplete. It does not show what the appellant was to do in carrying on the partnership business, or that he was to do anything except what might be inferred therefrom; and the circumstances under which the parties were situated, and their mode of dealing, afford strong proof that the farm referred to was to be used as an incident of the business they engaged in. I do not think that the evidence in the case warrants the court in finding that the parties agreed to carry on the farming business; their business was, I am satisfied, confined to the milk or dairy business; but that they were to have the benefit of the appellant's farm, in order to carry on the milk or dairy business, is very evident. I have no doubt but that was the understanding between them; they were to use the barn, the pasture land, the plow land for grain, and the meadows. The respondent was to occupy a part of the house, have the benefit of the fruit and garden beyond question; all their acts indicate that. The cows were kept there; the well was dug to supply water required in carrying on the business; the meadows were sown with plaster; a mower was procured and the plow land

XV. OR.—24.

cultivated at their joint expense; but that the absolute use of the farm was to belong to the partnership is not established by the proof. All that was raised upon the farm not necessary to the conduct of the dairy business, under my view of the evidence, belonged to the appellant individually. If it had been intended that farming was to constitute a principal business of the partnership, it would have been stated, no doubt, in such a way to the scrivener that he would have included it in the writings; but considered only as incidental to the dairy business, it was probably not mentioned so distinctly as to enable him to remember it. He remembered the dairy business, and, probably after he had expressed the terms that it was to be carried on, concluded he had earned the half dollar the appellant paid him for doing the writing. He was engaged in the real estate business, and no doubt was disturbed frequently while drawing up the articles. It would have been better for both parties if they had left their matter in parol. Their going to an inexperienced person to have a contract of that character drawn could hardly fail to get them into difficulty.

I think the decree upon the accounting should be changed by adding to the appellant's credit $12.50, on account of the mare referred to, and by discharging the item of $61.58 on account of the potatoes; I think the potatoes belonged to the general farming business, and were not included in the dairy matter. This will reduce the amount due from appellant to $186.58, instead of $260.66. The decree appealed from will therefore be modified in that particular; in all other respects will be affirmed. Neither party is entitled to cost of appeal, but each to pay one half of the clerk's fees of this court.