## KLEINSORGE *v.* ROHSE.

[S. C. 34 Pac. Rep. 874.]

JURISDICTION OF EQUITY TO REFORM WRITTEN CONTRACTS.— To justify a court of equity in reforming a written contract, it should clearly appear that there was some relation of trust or confidence between the parties that has been abused, or that there was fraud, or fraud on one side accompanied by mistake on the other, or that the means of knowing the facts were not equally open to both parties. *Archer* v. *California Lumber Co.* 24 Or. 341, approved and followed.

APPEAL from Multnomah: M. G. MUNLY, Judge.

This is a suit to reform and enforce a written lease of real property. The facts show that the plaintiff, Fred Kleinsorge, on February fifth, eighteen hundred and ninty-two, was the owner and in the possession of a tract of land in South Portland, Oregon, containing four and three hundredths acres, in or near the center of which was his dwelling-house with a path from it to the Macadam Road on the east, and a pipe laid from a spring near the west end of said tract to the house, supplying water for irrigating a garden and for domestic purposes. The plaintiff, Kleinsorge, leased said tract to Joseph Rohse for a term of five years, to be used as a concert garden, and, after the latter had commenced to improve it by building a high board fence around that part lying in front of said dwelling, and to erect a pavilion thereon, he desired an extension of the term, and the plaintiffs thereupon executed and delivered to him the following lease: "This agreement, between Fred Kleinsorge and Katharina

Kleinsorge, his wife, of the first part, and Joseph Rohse, of the second part, all of Fulton Precinct, of the city of Portland, Oregon, witnesseth: That the said Frèd Kleinsorge and Katharina Kleinsorge, his wife, in consideration of the convenants of the said Joseph Rohse,- (his executors or administrators,) doth hereby lease unto the said Joseph Rohse, his executors or administrators, from the fifth (5th) day of February, A. D. eighteen hundred and ninety-two, until the fifth day of February, A. D. nineteen hundred and two,—that is, for the term of ten (10) years,—the following described premises, to wit: Four (4) acres, or less, of ground, and fruit trees thereon, to be used as a pasture or as a concert garden at the discretion of the said Joseph Rohse. The said Joseph Rohse agrees to make room for street purposes, if so directed by the council of the city of Portland, without claiming any damage therefor. The said Joseph Rohse also agrees to pay such an increase of the taxes on said property, which being above and over the amount now paid by Fred Kleinsorge; after the expiration of the first five (5) years, Joseph Rohse agrees to pay all taxes; said Joseph Rohse further agrees to pay such street improvement as may be deemed necessary on the present streets. The rent to be paid at monthly payments of twenty-five ($25.00) dollars per month for the first three (3) years, and thirty-five ($35.00) dollars for the remaining seven (7) years. This monthly rent must be paid on or before the twentieth (20th) of each month, or this lease shall be void. And said Joseph Rohse further agrees to return said premises at the expiration of said time in as good order and condition as they are now in, reasonable wear and tear and unavoidable casualties excepted." This was dated February fifth, eighteen hundred and ninety-two, signed by the parties, and duly witnessed and acknowledged. Mr. Kleinsorge, on May second, eighteen hundred and ninety-

two, went to the mines in Eastern Washington, leaving his wife in possession of the dwelling-house, for whose accommodation the defendant placed locked gates in the high board fence, furnished her with keys thereto, allowed her to use the path from the house across his concert garden to the Macadam Road, and permitted her to occupy the dwelling until February fifth, eighteen hundred and ninety-three, when he placed other locks on the gates, and refused to furnish her with the keys to them, whereupon this suit was commenced to enjoin him from interfering with her possession and to reform the lease.

The plaintiffs allege that it was understood and agreed that said dwelling and enclosed garden, eighty-five by one hundred and sixteen feet, surrounding the house, together with the right of way across the concert garden to the Macadam Road, and the right to use the water from the spring for irrigating said garden and for domestic purposes, should be reserved to them by the terms of said lease; but that the defendant caused the foregoing lease to be prepared, and represented to them that it was in accordance with their agreement, and they, relying upon such representations, were thereby induced to execute it, and did not discover the defects and omissions until just before this suit was commenced; that said lease does not contain all the agreements of said contract, and that they believe the defendant fraudulently obtained their signatures to it well knowing it to be defective. The defendant denied the material allegations of the complaint, but, as the lease failed to describe any property, he admitted that there was a mutual mistake in this regard, and adopted the description of the property as given in the complaint, and prayed that the lease be reformed so as to contain a correct description of the leased premises; and the cause being at issue was tried

by the court, and a decree reforming said lease as prayed for by the plaintiffs was rendered, from which decree the defendant appeals. MODIFIED.

*Mr. James Finley Watson (Messrs. Edward Mendenhall, Edward B. Watson, Benjamin B. Beekman, and Elbert J. Mendenhall on the brief), for Appellant.*

*Mr. Edward W. Bingham (Mr. Clarence Avery on the the brief), for Respondents.*

Opinion by MR. JUSTICE MOORE.

Does the foregoing lease express the intention of the parties to the contract, is the question presented by this appeal. To entitle a party to have a written contract reformed by a court of equity, the complaint must show that some relation of trust or confidence existed between the parties to it, or that there was fraud or misrepresentation, or that the means of knowledge as to the terms and conditions were not equally open and accessible to both parties: *Archer* v. *California Lumber Co.* 24 Or. 341, 33 Pac. 526. The complaint herein is founded upon the alleged fraudulent representations of the defendant, but does not allege that any relation of trust or confidence existed between the parties. In *Hawkins* v. *Hawkins*, 50 Cal. 558, it was held that where the complaint did not allege that any relation of especial trust or confidence existed between the parties to the contract, or that the means of knowledge as to the terms and conditions of the writing were not equally open and accessible to both parties, a demurrer was properly sustained.

Upon the question of misrepresentations by the defendant as to the contents of the lease, the plaintiffs do not testify that he or any other person told them that it, as prepared, contained all or any of the terms or con-

ditions agreed upon, and there is not one particle of evi-
dence in the record to support the allegation to that effect
in the complaint. The answer, however, having admitted
that there was a mutual mistake in the description of the
premises, makes it proper to consider the evidence for the
purpose of ascertaining the terms and conditions of the
contract agreed upon by the parties: 20 Am. & Eng.
Enc. Law, 720, and cases cited. The evidence shows that
the plaintiffs and defendant, as well as most of their wit-
nesses, are Germans, and that the plaintiffs are old, and
do not well understand the English language; that Mr.
Kleinsorge went with the defendant to the office of
Messrs. Rickard & Ohloff, neither of whom he was ac-
quainted with, where Mr. Rickard prepared but one copy
of the first lease at Mr. Kleinsorge's dictation, and de-
livered it to Mr. Rohse. The date of its execution is
uncertain, the plaintiff testifying that it was February
fifth, eighteen hundred and ninety-two, while Mr. Rick-
ard, who is not positive, thinks it was some time during
the previous month. On the day of its date plaintiff F.
Kleinsorge executed and delivered to the defendant an
instrument, written in the German language, which being
translated, reads as follows:—

"FULTON, Oregon, February 8, 1892.
"I, the undersigned, testify hereby that the first
monthly payment of twenty-five dollars between the fifth
and twentieth of June begins for the year eighteen hun-
dred and ninety-two between the fifth and twentieth,
eighteen hundred and ninety-two; also no payments be-
tween the months in this year.
(Signed.)                              "F. KLEINSORGE."

The plaintiff F. Kleinsorge testified that upon con-
sultation with his wife, after the first lease was executed,
they concluded that the defendant would be compelled to

expend large sums of money in preparing the grounds
for a concert garden, and that he could not derive any
benefit therefrom until this work was completed, and that
to aid and encourage him in prosecuting the work this
instrument was executed. The defendant testified that
the plaintiff, after the lease was executed, offered to pay
him seventy-five dollars if he would permit Mrs. Klein-
sorge to remain in the dwelling-house and use the small
garden for the term of one year, to which he agreed, and
that the receipt was given in settlement thereof, and that
in pursuance of this agreement he placed gates in the
high board fence for her accommodation, and allowed her
to occupy the house and garden for one year. The plain-
tiff further testified that when the defendant desired an
extension of the term of the lease, he sent Mr. Ohloff,
whose partner had prepared the first lease, to see him
about it, and that he told Mr. Ohloff he would not lease
the house and garden, and that Mr. Ohloff, who is a sur-
veyor, told him he ought to have the premises surveyed,
but because of his lack of means it was not done; that
about two weeks after this request was made the defend-
ant's wife notified plaintiff that Mr. Ohloff had come to
prepare a new lease of the property, and that he told the
defendant and his wife that he would not lease the house
and garden. The defendant admits that the plaintiff
made this statement, but says he told the plaintiff at the
time that he had no use for the property with them in
possession of the house, and that this claim had been the
cause of their previous trouble.

Mr. Ohloff testified that he copied the description
from the first lease, and that, finding it insufficient, he
requested the plaintiff to procure his deed, that he might
correctly describe the property, but that both parties
claimed that it was sufficient, whereupon he wrote it at
the dictation of the plaintiff, who told him he was leas-

ing all the property to the defendant, and when it was completed he read it in English, and explained its terms in the German language; that the plaintiffs thereupon signed it in the presence of the witnesses, and acknowledged its execution. A duplicate copy of the new lease was then prepared and delivered to Mr. Kleinsorge, and the old one destroyed by Mr. Rohse. Mr. Kleinsorge testified that he did not understand the terms of the lease when read by Mr. Ohloff, and Mrs. Kleinsorge testified that she understood only that part of the lease which provided for the payment of rent. Some testimony was given which tended to prove that Mr. Kleinsorge intended, when he rented the property, to go to the mines, and that his wife was expected to live with a married daughter in Portland, Oregon. Several witnesses, most of whom were in the defendant's employ, testified that Mr. Kleinsorge told them that he had rented the whole tract to the defendant. It also appears that Mr. Kleinsorge, after he had leased the property, worked about three weeks for the defendant, assisting him in building fences on the leased premises, for which he made no charge and received no compensation.

Grouping the facts and circumstances, we find the following in support of the plaintiff's contention: The evidence of Mr. Kleinsorge as to the transaction; the fact that he leased four acres or less when he owned more; the circumstance that the defendant placed gates in the high board fence for Mrs. Kleinsorge's accommodation, and permitted her to remain in possession of the house and garden; and that Mr. Kleinsorge, without any compensation therefor, worked for about three weeks assisting the defendant in addition to the donation of three months' rent. Opposed to this we find the testimony of Frank Rickard that the first lease contained no reservation; that the new lease provided for an increased amount of rent,

contained no reservation, and the strong presumption that it expresses the intention of the parties; the testimony of Mr. Ohloff that no reservation was claimed by Mr. Kleinsorge at the time the lease was executed, and that he told him at that time he was leasing the whole premises; the denial of the defendant, and the testimony of several witnesses that Mr. Kliensorge stated to them that he had leased to the defendant all his property; and the receipt for seventy-five dollars. The trial court, by seeing the witnesses and hearing them testify, certainly had a better opportunity for judging their character, and the weight of their evidence, than this court can possibly possess from an inspection of the record, and yet we do not think the plaintiffs have established their case by the convincing evidence required in such cases, but, on the contrary, it affirmatively appears from the record that the equities are clearly with the defendant. The evidence does not show that Mr. Kleinsorge had reason to believe or did believe that Mr. Ohloff was acting as his agent, or stood in any confidential relation towards him, or that any misrepresentations were made to him by any person at the time the lease was executed.

2. Every written contract carries the strong presumption that it expresses the terms agreed upon between the parties to it, and ought not to be reformed, except when it clearly and satisfactorily appears that there has been a mutual mistake, or a mistake on the part of the plaintiff, accompanied by fraud upon the part of the defendant, or by such acts on his part as would clearly be inequitable between the parties. Tested by this rule, we do not think the plaintiffs have made the necessary proof to entitle them to the relief sought, and for that reason the decree must be modified in so far as it gave the plaintiffs any reservation in the property leased, or restrained the defendant from occupying any part of it.      MODIFIED.