---

Motion to strike brief from files overruled December 8, argued December 14, reversed December 31, 1914, rehearing denied February 23, 1915.

## BIRD *v.* MAYO.

(144 Pac. 574; 145 Pac. 13; 146 Pac. 475.)

**Appeal and Error—Brief—Motion to Strike.**

1. A motion to strike out respondents' brief because not filed in time will be overruled when not filed within the 10 days prescribed by Supreme Court rule 23 (117 Pac. xii), where no injury is shown.

**Reformation of Instruments—Mutual Mistake—Quantum of Proof.**

2. In a suit to reform a deed for mistake, the plaintiff must show precisely and by clear and convincing testimony in what the mistake consisted and that it was mutual.

**Reformation of Instruments—Deeds—Mutual Mistake in Description —Sufficiency of Evidence.**

3. Evidence in a suit to reform a deed *held* to show a mutual mistake in consequence of which the description covered an entire lot, instead of only a portion thereof, as the contracting parties intended.

[As to causes and proceedings for reformation of instruments, see note in 65 Am. St. Rep. 481.]

From Clatsop: JAMES A. EAKIN, Judge.

This is a suit by Clara S. Bird against Lucretia Mary Mayo and Martin N. Mayo. From a decree favoring defendants, plaintiff appeals and now moves to strike defendants' brief from the files.

    MOTION OVERRULED.

*Mr. John H. Hall,* for the motion.

*Mr. Harry W. Hogue, contra.*

In Banc. · Opinion PER CURIAM.

Appellant's brief was filed September 6, 1913. By stipulation time was granted respondents until January 3, 1914, in which to file their brief.; but, without getting any further time, they did not file the brief until August 22, 1914. No action was taken by the respondents in the meantime to force their appeal to hearing, and no motion was made to strike the brief ·from the files until October 1st, more than a month after it had been filed. Counsel for respondents filed a showing that during this time, from January to September, he was sick and in such a condition that he was unable to do the work of preparing the brief.

Rule 23 (117 Pac. xii) provides:

"All motions must be filed within ten days after a party or his counsel obtain knowledge of an alleged failure of the adverse party or his counsel to comply with the requirements of the statute or with the rules of this court. Any neglect to file a motion within such .time will be deemed a waiver of all defects, except matters of jurisdiction."

This is not a matter of jurisdiction, and as both parties have failed to comply with the rules, and no injury is shown, the motion to strike out will be overruled.

MOTION OVERRULED.

Reversed December 31, 1914.

ON THE MERITS.

(145 Pac. 13.)

This is a suit by Clara S. Bird against Lucretia Mary Mayo and Martin N. Mayo, to correct an alleged mutual mistake in a deed. The facts are stated in the opinion of the court.

REVERSED. REHEARING DENIED.

For appellant there was a brief and an oral argument by *Mr. John H. Hall.*

For respondents there was a brief over the names of *Mr. Harry W. Hogue, Mr. George C. Fulton* and *Mr. Milton W. Smith,* with oral arguments by *Mr. Hogue* and *Mr. Fulton.*

Department 2. Opinion PER CURIAM.

This is a suit to correct a mistake alleged to have been mutually made by the parties in a conveyance from the plaintiff to the defendant Lucretia Mary Mayo. It appears that at the date of the conveyance the plaintiff was the owner of lot 10 in block 2 of Ocean Grove Annex in Clatsop County, Oregon. The plats in evidence show that block to consist of a row of lots lying between Broadway Street and the ocean beach. Beginning at Broadway, the lots are numbered consecutively from east to west from 1 to 10, inclusive. All of them to and including 9 are of the uniform width of 50 feet. Lot 10 next to the sea is of much greater area, and, as it fronts upon the sands, is irregular in shape on the western boundary. The deed itself calls for lot 10 in block 2. The plaintiff

contends that both parties mutually understood that the actual ground conveyed was to be that portion only of lot 10 lying west of a line parallel with its eastern boundary and 50 feet distant therefrom. The defendants, as usual in such cases, deny the mistake and assert that the deed was drawn and executed according to the actual intention of the parties at the time.

1. It is a judicial platitude to say that it is incumbent upon the plaintiff to show precisely in what the mistake consisted and that it was mutual, all of which must be made to appear by clear and convincing testimony: *Newsom* v. *Greenwood,* 4 Or. 119, 123; *Ramsey* v. *Loomis,* 6 Or. 367, 374; *Remillard* v. *Prescott,* 8 Or. 37, 43; *McCoy* v. *Bayley,* 8 Or. 197; *Foster* v. *Schmeer,* 15 Or. 363, 368, 369 (15 Pac. 626); *Epstein* v. *State Ins. Co.,* 21 Or. 179, 181 (27 Pac. 1045); *Parker* v. *Thomson,* 21 Or. 523, 529 (28 Pac. 502); *Kleinsorge* v. *Rohse,* 25 Or. 51, 58 (34 Pac. 874); *Thornton* v. *Krimbel,* 28 Or. 271, 274 (42 Pac. 995); *King* v. *Holbrook,* 38 Or. 452, 460, 461 (63 Pac. 651); *Stein* v. *Phillips,* 47 Or. 545, 549, 550, 557 (84 Pac. 793); *Pope* v. *Hoopes* (C. C.), 84 Fed. 927, 929; Pom. Equity Jur. (3 ed.), § 862.

2. It is impracticable to set out more than the salient points of the testimony. According to her contention, the plaintiff had sold to another party what she supposed was lot 8 in that block, and proposed to sell to Mrs. Mayo all the remainder of the block between that and the ocean, reserving lot 9 whereon to place a residence which she intended to build for herself. The substance of the testimony on behalf of the plaintiff is to the effect that the defendant Martin Mayo, representing his wife, the other defendant, applied to the plaintiff to buy realty fronting on the

ocean. She, in company with her sister in law, accordingly went with him upon the premises where she pointed out the ground she had already sold upon which was afterward erected a hotel called Lockesley Hall Annex. She showed Mayo a stake 50 feet west of the lot occupied by Lockesley Hall Annex and told him that she would sell all west of the stake. The defendant declined to purchase at the price set, but afterward, when the plaintiff met Mayo in Portland, he inquired if she had yet sold that property, with the result that after some negotiations they agreed upon a price, and the defendant Martin Mayo caused a deed to be drawn conveying to his wife from plaintiff all of lot 10. There is no question made but what the plaintiff knew that the deed was written so as to include all of lot 10, because she looked it over at the time she signed it and understood its literal contents. The testimony further tends to show on behalf of the plaintiff that the defendants took possession of the property bounded on the east by the line 50 feet west of and parallel with the eastern boundary of the lot, constructed a fence on the line thus dividing lot 10, erected two houses west of the fence fronting the ocean, and sold to one King 40 feet off the east end of his holding which he told King to take, immediately west of the fence already mentioned. The deed to King described the 40 feet as the easterly 40 feet of lot 10, bounding it by beginning at the southeast corner, running thence northerly along the east line of the lot, and so on around to the place of beginning. King built his residence west of the fence more than 50 feet from the actual eastern boundary of the lot, as he says, by direction of the defendant Martin, representing his wife. No complaint was made to him about his having built upon the wrong property, for several months,

according to the statement of Mayo, and for more than a year, according to the testimony of King. The actual eastern 50 feet of lot 10 remained unimproved until the hearing of the case, except that the plaintiff, acting by her sister in law, the proprietress of the Lockesley Hall Annex, built a fence along the street or southern boundary of the vacant tract, laid a sidewalk there, and put gates in the fence for the accommodation of neighbors who desired to cross to their premises in the rear. The only act of ownership exercised over the property by the Mayos consisted in putting a fence along the eastern boundary of it after this suit was commenced and in allowing some one to pile some wood on the premises.

The testimony on behalf of the defendant is to the purport that he applied to the plaintiff to purchase the premises and demurred to the price, but that some months afterward she came to him in Portland, and, after some negotiations, named a lower price which he accepted; that he produced a plat of the addition and pointed out to her lot 10 as what he desired to purchase; that she was familiar with the premises; and that he caused the deed to be drawn, as stated, which she signed, knowing fully that it was a conveyance of all of lot 10.

If this were all the testimony, we might well decline to disturb the instrument in question. In our judgment, however, there are two admissions of the defendant Martin Mayo, who carried on all the business, although the conveyance was taken in the name of his wife, which turns the scale in favor of the plaintiff. Referring to the conversation in Portland, he testified thus:

"Q. Did you ask her in the restaurant anything about lot 9?

"A. Yes.

"Q. The first conversation?

"A. Yes, I did.

"Q. Well?

"A. I—she offered to sell lot 10. I says, 'Like to buy all that lot 9, too, if you like to sell it.' She says, 'No, I don't, want to keep that lot 10; if I ever get married, I like to build a house on it.' I says, 'In a case of that kind, all right.' Just exactly, I says, 'I wish you would get married soon so you can have a home.' That is just exactly what I say."

Another circumstance is derived from his evidence concerning his notification to Mr. King that he had built on the wrong property. He was asked:

"Q. When did Mr. King say that you notified him at that time?

"A. Yes, sir; and they says, 'I told him,' I says: 'You remember, Mr. King, I told you you have to give me deed back of that property, then I deed you another lot.' "

Knowing the actual situation of Lockesley Hall Annex, which was in very truth upon lot 9 instead of lot 8, the defendants must have believed that the vacant ground between that building and where King actually constructed his house was lot 9 instead of part of lot 10. Moreover, if the defendants' theory was correct, their deed to King correctly represented the ground conveyed to the latter, and there would be no necessity for King to reconvey to them. Between the Mayos and King the error consisted in the latter putting his house on the wrong ground. There was no mistake in the deed from Mayo to King if the contention of the defendants here is legitimate.

Considering that the defendants made no use of the eastern 50 feet of lot 10, made no objections to King taking possession of the tract west of the fence until

long after he had built his house, and that the defendants wanted to buy from the plaintiff lot 9 which she had already sold to another party, it is clear to our minds that the defendants participated in the mistake alleged by the plaintiff. It is equally manifest that the plaintiff made a mistake in the description of the property actually intended to be sold. It is obvious from the conduct of both parties that the actual ground intended to be made the subject of the conveyance began 50 feet west of the eastern boundary of lot 10. The error consisted in applying that conventional description to that part of the lot. The deed should be made to cover only the ground actually intended to be conveyed, regardless of the arbitrary designation applied to it in the writing. A careful consideration of the whole testimony convinces us that the clear preponderance is with the plaintiff, and that the conveyance should be reformed according to the prayer of the complaint.

Accordingly, the decree of the Circuit Court is reversed, and one here entered as desired by the plaintiff.                    REVERSED.   REHEARING DENIED.

MR. CHIEF JUSTICE McBRIDE did not participate in this decision.

---

Denied February 23, 1915.

ON PETITION FOR REHEARING.

(146 Pac. 475.)

MR. JUSTICE BENSON delivered the opinion of the court.

After a careful re-examination of the evidence herein, we are satisfied that the case has been correctly

decided, and that there has been nothing presented which would justify a further consideration of the questions involved.

It is therefore ordered that the petition for rehearing be denied.          REVERSED.   REHEARING DENIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BURNETT and MR. JUSTICE BEAN concur.