Submitted on briefs December 3, 1925, reversed January 12, 1926.

# L. B. MENEFEE LUMBER CO. *v.* O. V. GAMBLE.

## (242 Pac. 628.)

**Reformation of Instruments—Complaint must Allege That Mistake was not Result of Gross Negligence on Part of One Seeking Reformation.**

1. In suit to reform contract for mistake of parties, complaint must allege that mistake was not the result of gross negligence on part of one seeking reformation.

**Reformation of Instruments—Burden of Proving Original Agreement and Existence of Alleged Mutual Mistakes on One Seeking to have Writing Reformed.**

2. Burden of proof of original agreement and of existence of alleged mutual mistakes is on the one who seeks to have writing reformed, since presumption is that written contract truly sets forth intention and understanding.

**Contracts—Existence of Written Order With Written Acceptance Thereof, Raises Presumption of Validity of Contract and Freedom from Fraud.**

3. Existence of written order, together with written acceptance thereof, raises presumption of the validity of the contract and its freedom from fraud.

**Reformation of Instruments—Court of Equity Should Never Decree Reformation of Written Contract Except upon Clear and Decisive Proofs.**

4. Court of equity should never decree reformation of written contract by omitting certain material words and inserting other material words in their stead, except upon proofs that are full, clear, cogent, and decisive.

---

1. See 23 R. C. L. 360.
2. Burden of proof in action for reformation of written instrument, see note in 5 L. R. A. 159.
3. See 6 R. C. L. 839.

**Reformation of Instruments—Requisite Degree of Proof of Existence of Oral Agreement Held not Established.**

5. In suit to reform written contract to cover sale of mining poles instead of piles, *held* that plaintiff had not adduced requisite degree of proof of existence of valid oral agreement between it and defendant for sale of mining poles.

**Reformation of Instruments—Supreme Court may, upon Sufficient Showing, Correct Written Contract so as to Conform With Lawful Pre-existing Oral Contract.**

6. Supreme Court is authorized, in proper case, upon sufficient showing, to correct a written contract so as to make it conform with lawful pre-existing oral contract, but is without power to make a new contract.

**Reformation of Instruments—Failure of Defendant to Report Discrepancy can Avail Plaintiff Nothing in Suit for Reformation.**

7. Failure of defendant to report discrepancy between order for piles and bill of lading cannot avail plaintiff anything in suit for reformation, based upon a mutual mistake made at time of execution of written contract.

---

Contracts, 13 C. J., p. 370, n. 25, p. 525, n. 37.
Pile, 30 Cyc., p. 1606, n. 16 New.
Piling, 30 Cyc., p. 1606, n. 18 New.
Reformation of Instruments, 34 Cyc., p. 910, n. 50, p. 915, n. 86, p. 918, n. 88 New, p. 949, n. 61, p. 976, n. 64, p. 979, n. 1, p. 980, n. 4, p. 984, n. 34, p. 988, n. 37.

From Multnomah: GEORGE ROSSMAN, Judge.

In Banc.

This is a suit in equity brought to reform an alleged contract, for a judgment on the contract as reformed, and for an order restraining the defendant from prosecuting an action at law for damages on account of an averred breach of the contract sought to be rectified. Plaintiff seeks to reform the contract so that it shall provide for the sale and purchase of 270 pieces No. 1 peeled fir mining poles or mining timber 24 feet in length instead of 270 pieces No. 1 peeled fir piles 21 to 24 feet as written in defendant's order. From a decree of the court in favor of the plaintiff, defendant appeals.   REVERSED.

For appellant there was a brief over the name of *Messrs. Lewis, Lewis & Finnigan.*

For respondent there was a brief over the name of *Mr. W. B. Shively.*

BROWN, J.—The plaintiff is an Oregon corporation engaged in the manufacture and sale of lumber and other forest products. The defendant was engaged in the business of buying and selling piling under the firm name and style of O. V. Gamble, Piling, Inc.

On June 29, 1921, the plaintiff, through its sales manager, C. L. Reynolds, wrote a number of circular letters, one of which was addressed to the defendant herein. It reads:

"O. V. Gamble Lumber Company,
  "Couch Building,
    "City.
"Gentlemen:
  "We have at our pole camps at Conser and Dever on the Oregon Electric, and Millersbury on the Southern Pacific, approximately 150,000 lineal feet of fir mining poles, 6″ to 8″ tops, 10′ to 24′ lengths. If interested in same, will be glad to quote you on one or more carloads. These poles are extra fine, thoroughly seasoned, and feel sure they would please your trade in every way.
                    "Yours truly,
              "L. B. MENEFEE LUMBER CO."

On or about August 24, 1921, the defendant received an order from the Chas. K. Spaulding Logging Company "for 270 pieces No. 1 fir piling." Thereafter, he called C. L. Reynolds, sales manager of Menefee Lumber Co., by telephone. Concerning this telephone conversation Reynolds testified:

"He asked me if we still had some of those poles at Millersburg and he wanted to know if we thought we could get as many as 270 pieces, 21 to 84 feet, and I told him we could not, we had nothing but 24s, and even lengths. * * He said he had an order calling for 270 pieces 21 to 24 feet. I told him we could not furnish it. He said, 'In order to comply with this technically, couldn't you cut back a few pieces?' I told him we would be willing to cut them back if he would pay us for it and pay for 24 feet, and he said to go ahead, and the order was accepted on that basis."

On that same day, the defendants prepared the following written order in duplicate and forwarded it to the plaintiff company:

"O. V. Gamble, Piling, Inc.
    713–714 Couch Bldg.
            Order.
            Portland, Oregon, 8/24/21.
Order No. 508.
To L. B. Menefee Lbr. Co.,
        City.
Ship to
Destination San Diego, Calif.
Via
Terms, regular.   Price, F. O. B. 72¢ rate, San Diego.
                  Commission, None.
270 pieces #1 Peeled Fir Piles.
    Lengths, 21 to 24'.
Min. Dia. at top, 6".
Please ship exact.
Shipment by next week.
Price: 10¢ per foot.
Will furnish consignee's name by Saturday, A. M.
    If for any reason you cannot handle this order return to us in first mail. If you wish to accept this order please sign duplicate and return to us without delay. Send invoice and original bill of lading to us.
                O. V. Gamble, Piling, Inc.
                    By O. V. Gamble."

The plaintiff company altered the line quoted in the order reading, ''Lengths, 21 to 24','' by striking out the words ''21 to,'' so that the same read, ''Lengths, 24','' and thereupon indorsed across the face thereof the following:

''Will cut back a few pieces to 21, 22, 23 ft. and chg. you with the labor and for 24.
''Accepted,    L. B. Menefee Lumber Co.,
''By C. L. Reynolds, Secretary.''

In accordance with his promise to furnish the name of the consignee as stated in his written order, on August 27, 1921, the defendant wrote the plaintiff as follows:

''Please refer to my order #508 and 279 pieces of fir poles:
''Please consign them to Chas. K. Spaulding Logging Co., San Diego, Calif., on an order B/L. Notify DeWaard & Cobham, San Diego, showing Spaulding as the shippers.
''Thank you.
''O. V. Gamble.''

Gamble denies that he gave the plaintiff an order over the phone. He testifies that he called up the Menefee Lumber Company, as well as others, and asked for a quotation of prices, and that the only order that he gave the plaintiff was the order in writing. Among other things, the defendant testified:

''I recall calling up Menefee with every other firm I called at that time, as I had this order of Spaulding's in front of me, and asked him for a price on those poles or piling.
''Q. Go ahead. What was said?
''A. And the Menefee Company said: 'We haven't anything shorter than 24 foot in that length.' I said, 'Would you cut them back?' He said, 'Yes.' 'Well,

I will let you know.' And I didn't know until this bill came in how much it was going to be. * *

"Q. In other words, this conversation with Mr. Reynolds might have taken place?

"A. Parts of it. I won't question anything in his testimony except the fact that I didn't want to buy mining props, and I never had any intention to buy them, and I never had any intention of trickery."

Reynolds admits that mining poles and props are not fit for piling, and, in testifying concerning plaintiff's business relation with one Simpson who filled the order in question with mining poles and props, said:

"This man Simpson had a contract with us to get out ties. * * The pole business was a side issue. He made these poles out of the limbs and tops. * * He had a little sawmill and he was sawing ties, * * and anything that would not make those ties he made into these poles. * * The mines use these poles for temporary braces. * * They use them sometimes only for a few weeks and abandon them. For that reason they buy the cheapest grade of lumber. * * It is nothing like piling. Piling is sawed out of the whole tree and tapers, whereas mining poles * * would not be suitable for piling at all."

The words "pile" and "piling" are authoritatively defined as follows:

"Pile. n. A heavy pointed timber forced into the earth to form a foundation for a building, wharf, or the like.

"Piling. The act or process of preparing piles and of driving them. Material from which to make piles, or that can be used as piles." Funk and Wagnall's New Standard Dictionary of the English Language.

Nobody pretends that the mining poles or props supplied through the plaintiff were suited for "piles" or "piling." The consignee desired to purchase "peeled fir piling," but peeled fir mining props or poles were supplied and the merchandise was rejected. The testimony shows that the term "fir poles" is often used to embrace "fir piles" or "piling," but a "fir pile" is not a "fir mining pole" or prop.

Our reports contain many decisions involving questions similar to those at issue in the case at bar. What constitutes the essential averments of a complaint for reforming a written contract entered into by the mutual mistake of the contracting parties, and the high degree of proof requisite to establish such allegations, has been repeatedly declared by this court: *Shively* v. *Welch,* 2 Or. 288; *Newsom* v. *Greenwood,* 4 Or. 119; *Evarts* v. *Steger,* 5 Or. 147; *Lewis* v. *Lewis,* 5 Or. 169; *Stephens* v. *Murton,* 6 Or. 193; *McCoy* v. *Bayley,* 8 Or. 196; *Foster* v. *Schmeer,* 15 Or. 363 (15 Pac. 626); *Hyland* v. *Hyland,* 19 Or. 51 (23 Pac. 811); *Hughey* v. *Smith,* 65 Or. 323 (133 Pac. 68); *Bird* v. *Mayo,* 75 Or. 100 (144 Pac. 574, 145 Pac. 13, 146 Pac. 475); *Hyde* v. *Kirkpatrick,* 78 Or. 466 (153 Pac. 41); *Bott* v. *Campbell,* 82 Or. 468 (161 Pac. 955); *Boardman* v. *Insurance Co. of Pa.,* 84 Or. 60 (164 Pac. 558), and local citations; *Welch* v. *Johnson,* 93 Or. 591 (183 Pac. 776, 184 Pac. 280); *Dolph* v. *Lennon's, Inc.,* 109 Or. 336 (220 Pac. 161); *Smith* v. *Cram,* 113 Or. 313 (230 Pac. 812).

In the complaint in this case, the cause of suit is averred to rest upon the mistake of the parties to the contract. It asserts neither fraud nor deceit, but alleges mutual mistake of the parties thereto. As de-

clared by this court in *Dolph* v. *Lennon's, Inc.,*
*supra:*

"There is a vast difference between mistake and
fraud. One negatives the other."

1. Measured by the rule set down by the authorities
above noted, the complaint must allege that the mis-
take was not the result of gross negligence on the
part of the plaintiff, who is seeking the reformation
of the contract. Turning to the evidence upon that
subject, it is shown that the defendant received from
the Spaulding Logging Company an order for 270
peeled fir piles, at seventeen cents per lineal foot,
f. o. b. San Diego, California. The order was a rush
order. The defendant went into the market to pro-
cure the piles. Among other firms, he called the
plaintiff company by phone, for the purpose of ascer-
taining its price for the merchandise sought. Now
comes the conflict in the evidence. Plaintiff's sales
manager testified to the conversation hereinbefore set
out, which is to the effect that defendant gave an oral
order over the telephone for fir mining poles. That
the defendant gave the plaintiff any oral order is dis-
puted by him. All admit, however, that, in the
course of the transaction, the plaintiff received
through the mails a written order in duplicate call-
ing for "270 peeled fir pines." The sales manager
of the plaintiff corporation testified, in effect, that he
read the order, corrected it, and accepted it on behalf
of the company by signing it and returning it to the
defendant; further, that he changed the order by al-
tering the description of the dimensions of the
"piles," but that he overlooked the variance between
the oral and the written order with reference to the
use of that word.

It is not claimed that the defendant misled or deceived the plaintiff in order to induce him to accept the order as written, or that there was any relation of trust between them. They were dealing at arm's-length. In that connection, read the case of *Chicago, etc., Ry. Co.* v. *Belliwith,* 83 Fed. 437 (28 C. C. A. 358), where Judge SANBORN, in an interesting and informative discussion, wrote:

"A written contract is the highest evidence of the terms of an agreement between the parties to it, and it is the duty of every contracting party to learn and know its contents before he signs and delivers it."

See, also, *Lovell* v. *Potts,* 112 Or. 538, 560 (226 Pac. 1111), where we quoted the following from Mr. Justice HUNT in the case of *Upton* v. *Tribilcock,* 91 U. S. 45 (23 L. Ed. 203):

"A contractor must stand by the words of his contract; and if he will not read what he signs, he alone is responsible for his omission."

The following note by Mr. Freeman, from 138 Am. St. Rep., p. 811, is enlightening:

"The rule is well established that, in the absence of any evidence of incapacity to read, or any trick, fraud, or artifice resorted to to prevent his reading it, a party signing a written instrument that is plain and unequivocal in its terms is bound by its express terms and conditions therein contained, and that he cannot set up his own carelessness, negligence, ignorance, or indolence as a defense, and, because he failed to make use of his faculties possessed by him for determining its conditions, be heard to say that its terms or conditions should be other or different from what they are."

The annotator supports that proposition by authorities too numerous to cite.

To the same effect, see *Hyde* v. *Kirkpatrick*, 78 Or. 466 (153 Pac. 41, 153 Pac. 488); *Manley* v. *Smith*, 88 Or. 176 (171 Pac. 897), and the many authorities there collected by Mr. Justice BURNETT.

In considering the effect of the negligence upon the part of Mr. Reynolds, we keep in mind the proof that he is a man whose ability and wide business experience has taught him the liability that attaches upon deliberately signing a written contract. For at least once this careful business man was inexcusably negligent.

The plaintiff also averred:

"That the errors and mistakes in drawing said order, and in accepting the same, * * consisted in the mis-statement of the price and in a misdescription of the merchandise sold,—the same being described as 'fir piles' when said merchandise should have been described as fir mining poles or mining timbers— were mutual ones, shared in common between the plaintiff and the defendant."

2, 3. The burden of proof of the original agreement and of the existence of the alleged mutual mistakes is upon the plaintiff, who seeks to have the writing reformed. The presumption arising from a written contract is that it truly sets forth the intention and understanding of the parties: *Remillard* v. *Prescott*, 8 Or. 37; *Kleinsorge* v. *Rohse*, 25 Or. 51, 53 (34 Pac. 874); *Dolph* v. *Lennon's, Inc.*, 109 Or. 336 (220 Pac. 161); *Hayes* v. *Penn. Mutual Life Ins. Co.*, 222 Mass. 382 (111 N. E. 168); 23 R. C. L., § 65, p. 365; 24 Am. & Eng. Ency. of Law (2 ed.), pp. 650, 651; note, 19 Ann. Cas. 344. It follows that the existence of the written order set out above, together with the plaintiff's written acceptance thereof, raises a presump-

tion of the validity of the contract and its freedom from fraud.

4. The degree of proof required by a court of equity before granting the relief sought in the cause at issue has been variously expressed. This may be gleaned from the reported cases in our own jurisdiction, extending from that of *Shively* v. *Welch*, 2 Or. 288, to *Smith* v. *Cram*, 113 Or. 313 (230 Pac. 812). Obviously, from the many cases discussing this feature of the case, a court of equity should never decree a reformation of a written contract by omitting certain material words and inserting other material words in their stead, except upon proofs that are full, clear, cogent, and decisive: Law of Contracts, Bishop, § 708.

Note the strength of the proof and the essentials to be established, as required by the highest court in the land:

"Where the agreement as reduced to writing omits or contains terms or stipulations contrary to the common intention of the parties, the instrument will be corrected so as to make it conform to their real intent. The parties will be placed as they would have stood, if the mistake had not occurred. Kerr, Fraud and Mistake, 419, 420. The party alleging the mistake must show exactly in what it consists, and the correction that should be made. The evidence must be such as to leave no reasonable doubt upon the mind of the court as to either of these points: *Beaumont* v. *Bramley*, 1 Turner and Russell, 41–50; *Marquis of Breadalbane* v. *Marquis of Chandos*, 2 Mylne & Craig, 711; *Fowler* v. *Fowler*, 4 De Gex & Jones, 255; *Sells* v. *Sells*, 1 Drewry & Smales, 42; *Lloyd* v. *Cocker*, 19 Beavan, 144. The mistake must be mutual and common to both parties to the instrument. It must appear that both have done what neither intended. * * Where the minds of the parties have not

met, there is no contract and hence none to be rectified." *Hearne* v. *Marine Ins. Co.,* 20 Wall. 488 (22 L. Ed. 395).

To like effect are *Maxwell Land-Grant Case,* 121 U. S. 325 (30 L. Ed. 949, 7 Sup. Ct. Rep. 1015); *Colorado Coal etc. Co.* v. *United States,* 123 U. S. 307 (31 L. Ed. 182, 8 Sup. Ct. Rep. 131); *United States* v. *American Bell Telephone Co.,* 167 U. S. 224 (42 L. Ed. 144, 17 Sup. Ct. Rep. 809).

The rule requiring a high degree of proof in suits for the correction of written contracts rests upon eminent authority. The following excerpt from a leading case proclaims its importance:

"If not adhered to by the courts, * * the security and safety reposed in deliberately written instruments will be frittered away, and they will be left to all the uncertainty incident to the imperfect * * memory of witnesses." *Potter* v. *Potter,* 27 Ohio St. 84.

Reformation has been termed an extreme remedy: 4 Page, Contracts, § 2212.

5, 6. The plaintiff has not adduced the requisite degree of proof of the existence of a valid oral agreement between it and the defendant for the sale of mining poles or mining timbers as alleged in the complaint, to empower a court of equity to reform the written contract. This court is without power to make a new contract. It is authorized, in a proper case, upon a sufficient showing, to correct a written contract so as to make it conform with a lawful pre-existing oral contract. Plaintiff avers that the contract, as written, represents a mutual mistake, "shared in common between the plaintiff and the defendant." That plaintiff was mistaken abundantly appears. Its mistake was an honest one. It had

mining poles or props for sale, and not piles or piling. On the other hand, Gamble, as his written order indicates, is a dealer in piling and had a valid reason for purchasing the piles described in his order. He had an order from the Spaulding Logging Company for 270 piles, which order, if promptly filled, offered a profit of several hundred dollars. It is reasonable to believe that he wished to obtain piling for his customer. Later, Spaulding's order was filled by Gamble with piling purchased at the same price designated in the written order. It is difficult to find that he made a mistake by writing the word "piles" in the order when the word describes that which he wished to buy.

7. There is an absence of decisive proof that the minds of the contracting parties met in any agreement for the sale of mining timber. Both the vendor and the vendee appear to have been actuated by honorable motives. The plaintiff desired to sell mining timbers. The defendant desired to purchase timber for piling. The evidence of each has been corroborated by circumstances inherent in the transaction. The defendant's negligence in failing to report the discrepancy between his order and the bill of lading does not prove the cause made by plaintiff's complaint. Such failure to report plaintiff's mistake can avail it nothing in its suit for reformation, based upon a mutual mistake made at the time of the execution of the written contract.

The decree of the lower court is reversed and the suit dismissed, with costs to neither party in this court. Reversed and Dismissed.