[Filed November 17, 1890.]

## A. MEIER ET AL. v. P. KELLY ET AL.

MORTGAGE—DESCRIPTION—PAROL EVIDENCE.—Where the terms used in the description contained in a deed or mortgage are clear and intelligible, the court will put a construction on those terms, and parol evidence is not admissible to control the legal effect thereof.

REFORMATION OF MORTGAGE—COMPLAINT IN.—In a suit to reform a deed or mortgage on the grounds of mistake, complaint must allege distinctly what the original agreement was, and point out with clearness wherein there was a mistake, and that it did not arise from gross negligence of the plaintiff.

STATUTE OF LIMITATIONS—TAX DEED—STREET ASSESSMENTS.—Section 2840, p. 1314, 2 Hill's Code, does not apply to land sold for delinquent street assessment.

Multnomah county: L. B. STEARNS, Judge.

Defendants appeal. Reversed.

This was a suit for injunction, and to quiet title to certain land in subdivision block 26, of large block C, of Carter's addition to the city of Portland. The only defendants served were Penumbra Kelly, the sheriff, V. B. DeLashmutt, H. B. Oatman and Sidney Dell, judgment creditors. A temporary injunction was had, which on final hearing September 27, 1889, was made perpetual. The defendants above-named appeal.

The amended complaint alleges that the plaintiff is the owner in fee simple and in possession of the southeast quarter of block 26, of Carter's addition to the city of Portland, Oregon, which land was, on and prior to June 12, 1876, owned by C. M. Carter; that it was known and desig-

nated upon a map, duly filed in the office of the county
clerk, as the east 115 feet of lot 5, in subdivision block 26,
of large block C, in Carter's addition to the city of Portland,
and, according to other maps filed in the office of the county
clerk, and by common usage, it is known and designated as
lots 3 and 4, block 26, in Carter's addition, there being no
block of the number 26, except said block of which said
parcel forms the southeast quarter; that prior to June 12,
1876, on February 16, 1876, C. M. Carter made a mortgage
to Catherine Quinney upon said property, describing the
same as lots 3 and 4, in block 26, in Carter's addition to the
city of Portland, that being all the property owned by him
in that block or vicinity—mortgage recorded same day;
that on July 19, 1877, Carter was adjudged a bankrupt;
that A. J. Fleurot (assignor of defendant Dell) obtained
judgment against Carter, June 12, 1876, and proved her
claim in the bankrupt court as a secured claim, by virtue
of said judgment lien; that Knapp, Burrell & Co. (assignors
of defendant Dell) and defendants V. B. DeLashmutt and
H. B. Oatman obtained judgments against C. M. Carter
subsequent to said mortgage, and proved the same in the
bankrupt court in like manner; that Quinney, by leave of
the bankrupt court and on notice to the said judgment
creditors, who were made parties, foreclosed said mortgage
upon lots 3 and 4, block 26, in Carter's addition, which is
the same property before described; that the sheriff, upon an
order of sale thereunder, sold the same to D. J. Malarkey,
who afterwards conveyed to Quinney, who afterwards ob-
tained a sheriff's deed for said land described therein as lots
3 and 4, block 26, Carter's addition; that afterwards, on
notice to said lien creditors, Quinney, by order of the bank-
rupt court, obtained a deed from Carter's assignee for said
land, describing it as the E. ½ of lot 5, in block C, in Carter's
addition to the city of Portland; that since July 20, 1878,
Quinney and her grantees have been in possession of said
land; that on September 25, 1888, C. M. Carter and wife
made to said Meier a deed for said land, reciting that in

said mortgage it was their intention to describe a parcel of land correctly described as the E. ½ of lot 5, in subdivision 26, in block C, in Carter's addition; that on June 23, 1885, the chief of police of the city of Portland, upon due proceedings had for assessment for street improved, sold and conveyed to the city of Portland the said property described as lot 5, in block C, subdivision 26, in Carter's addition to the city, and afterwards said city conveyed same to plaintiff; that plaintiff and his assignors have been in possession of and paid taxes upon said tract of land for more than ten years last past, and neither of defendants has been in possession for ten years last past; that large sums have been paid on the judgment of A. J. Fleurot; that said and the other judgments constitute a cloud on plaintiff's title.

The answer to the original complaint was, by stipulation, to stand as an answer to the amended complaint in so far as it applied, and all further allegations of amended complaint to be considered as denied. It alleges that the sheriff, P. Kelly, had levied upon "the east 115 feet of the south 100 feet of subdivision block 26, of large block lettered C, in Carter's addition to the city of Portland, Multnomah county, Oregon." It denies that Carter, on June 12, 1876, owned the S. E. ¼ of block 26, or that he executed a mortgage thereon to Catherine Quinney; denies that the mortgage description was a correct one of the land in controversy, or was in common use, or so described in the maps in common use; denies notice of proceedings in bankrupt court as to said land; denies possession and adverse possession by plaintiff and grantors, and payment of taxes, except as upon lots 3 and 4 of block 26; admits that whatever title Catherine Quinney and Carter's assignees had is owned by plaintiff; also other formal denials. The answer further alleges that on and prior to June 12, 1876, C. M. Carter was the owner of said land levied upon; that previously, in 1871, said C. M. Carter and others, then the owners of said Carter's addition, laid out and platted it into blocks and lots according to law, and caused it to be duly recorded on said date;

that there was never at any time, and is not now, any other
or further or different description of the lots and blocks of
said addition, so far as C is concerned, by any plat of said
property than as is in said plat, found on page 490 of Book
P of deeds; alleges the making of a mortgage prior to June
12, 1876, by Carter to Quinney upon lots 3 and 4, of block
26, of Carter's addition to the city of Portland, Oregon; the
foreclosure of said mortgage without any allegation of mis-
take, describing the property as above; the sale thereof in
1878, and the sheriff's deed on July 30, 1880; the assignee's
deed on October 14, 1880, without notice to the judgment
creditors; and thereafter the said Quinney and her succes-
sors were in constructive possession only of said land, which
is now and always has been, vacant land. The answer fur-
ther alleges the amounts due upon the said several judg-
ments, and that they have been kept alive; that said judg
ments are liens upon said land; and pray for a decree
therefor. The reply to the original answer was also stipulated
to stand. It denies that there was ever any other or further
description of said lots than as set forth in the answer, but
alleges that all the blocks in Carter's addition, including
said block 26, were so divided into lots that the southeast
quarter comprised lots 3 and 4; denies that there were no
such lots as 3 and 4 in said block 26; denies that the judg-
ments are a lien on the land; denies knowledge of existence of
the judgments and of the amounts due thereon; alleges notice
at all times to defendants of the right and claims of plaintiff
and his grantors, and that they understood that said mort-
gage was intended to and did include this tract of land in
controversy. Aaron Meier, plaintiff, having died pending
suit, his heirs, administrator, and assigns under bond for title,
were, by stipulation, made parties plaintiff. The plat of
Carter's addition to the city of Portland referred to in the
pleadings and evidence in this case, is as follows:

The evidence shows that there is no block or subdivision of a block in Carter's addition to the city of Portland numbered 26, except the subdivision 26 of lettered block C, and that at the time Carter made the mortgage to Quinney, he owned, of record, no property in large block C, except the property in dispute in this suit. The plaintiff, having succeeded by mesne conveyance to the title of Quinney and Carter to the property in dispute, brings this suit to enjoin defendants from selling said property under their judgments, and to quiet his title to the same. A decree was entered by the court below in favor of plaintiff, from which this appeal is taken.

*Sidney Dell*, for Appellants.

*H. H. Northup* and *H. B. Nichols*, for Respondents.

BEAN, J.—The property in controversy in this suit is the S. E. ¼ of subdivision 26 of block C of Carter's addition to the city of Portland. Plaintiff claims that the description of the property in the mortgage from Carter to Quinney as lots 3 and 4, block 26, Carter's addition to the city of Portland, is a good and sufficient description of the property in dispute, and that when this mortgage was foreclosed and the property sold the purchaser obtained a title thereto, free from the liens of defendants, while defendants claim that the mortgage did not describe this property and, although they were parties to the foreclosure suit, their lien, as against this particular property, was not affected thereby. The plat of Carter's addition, being referred to in the mortgage to Mrs. Quinney, becomes a part of the description contained therein, and is considered as incorporated in the mortgage itself. (2 Devl. Deeds, § 1020.) A reference to the plat is therefore necessary in order to determine the sufficiency of the description of the mortgaged property, and whether such description includes the property in dispute in this case. This plat shows a large block lying north of Montgomery street, 460 feet square, with streets all around it. It appears to be subdivided by two lines, one running east and west, and the other north and south, and intersecting each other

in the center of the block, forming four subdivisions or smaller blocks, each 230 feet square. In each of these subdivisions are the numbers 23, 24, 25 and 26, respectively, commencing at the northwest corner of the block. This block C is also subdivided by three parallel lines running east and west, which, by their intersection with the north and south lines, make eight smaller subdivisions or lots in the block, and are numbered consecutively from *1 to 8, inclusive, commencing at the northeast corner of the block, thus making two of these smaller subdivisions or lots in each of the larger subdivisions, the two in subdivision 26 being numbered 5 and 6. This plat also shows a number of blocks lying south of Montgomery street, each being designated by numbers. The greater portion of the numbered blocks are 200 feet square. One of these blocks, No. 41, is subdivided into eight equal parts, and these parts are numbered consecutively from 1 to 8 inclusive, commencing at the northeast corner of the block. In the center of this block are written the words, "Order of numbering lots." The contention of plaintiff is that subdivision 26 of block C should be deemed one of the blocks of Carter's addition, and that the order of numbering blocks, as indicated in block 41, should be applied to this block, thus making the description of the property in dispute lots 3 and 4 of block 26 of Carter's addition to the city of Portland, the same as in the mortgage from Carter to Quinney. It appears from the evidence that there is no other block 26 in Carter's addition, except this subdivision of block C, and that, at the time of the mortgage, Carter owned no other property or record in block C except the property in dispute in this case

I think, from the evidence before us, we may safely assume that when Carter made the mortgage to Mrs. Quinney, he fully intended to describe therein that property, and that the description of the property in the mortgage was intended to do so; so that if we could disregard the language of the instrument and construe it according to the actual intention of the parties, whether expressed in the mortgage or not, we

would have no difficulty with this branch of the case.   But
in our construction of the mortgage we are confined to the
intention of the parties as gathered from its contents.   As a
matter of construction we cannot change or vary the
description actually contained in the mortgage, although it
may be plain that it is not the description intended to be
inserted therein.   Where the terms used in the description
contained in a deed or mortgage are clear and intelligible,
the court will put a construction on the terms, and parol
evidence is not admissible to control the legal effect of such
description.   (*Waterman* v. *Johnson*, 13 Pick. 261; *Bond* v.
*Fay*, 12 Allen 86); but when the description is uncertain and
ambiguous, parol evidence will be admissible to fit the
description to the thing described, but not to add to or
change the words of the description. (*Radford* v. *Edwards*, 88
N. C. 347.) In this case we find no uncertainty or ambiguity
in the description, but it is definite and certain, and in every
way clear and intelligible; and therefore there is no room
for the admission of parol evidence.   Nor can we agree with
respondents' counsel in the construction of the plat.   There
are two classes of blocks shown in this plat,—one numerical,
and the other lettered; and there is indicated on the plat a
key for the numbering of the lots in the numerical blocks, and
it is sought to apply this key to the subdivisions of the
lettered blocks.   It would seem from the plat that after plat-
ting that portion of the addition south of Montgomery street
into numerical blocks of a given size, and indicating on
block 41 the manner in which these blocks should be divided
into lots, the parties making the plat, for reasons sufficient
to themselves, laid off and platted another and much larger
block south of Montgomery street and designated it by the
letter C.   They also took the precaution, it seems to us, in
order to avoid any question as to the division of the block,
to indicate on the plat itself the manner in which it should
be done.   This block is completely divided and subdivided,
and there can be no reason, as we can conceive, why the
order of numbering lots as indicated in block 41 should be

applied to it, nor could it be done without doing violence to the expressed intention of the parties as indicated on the plat itself, and besides, such a division would be impracticable, to say the least. If the order of numbering lots as indicated in block 41 should be applied to each subdivision of block C, there would be eight lots in the center of the block, abutting on neither street nor alley, and with no public way of ingress or egress, a condition evidently never contemplated by the parties making the plat. This is a case where the parties simply made a mistake in the description in the mortgage, that can only be corrected in a proper proceeding.

Plaintiff insists that if we should be of the opinion that the property in controversy is not described in the Quinney mortgage, we ought, nevertheless, in this suit, to reform it so as to make it conform to the actual intention of the parties; but we are precluded from the consideration of that question by the fact that the complaint contains no allegation upon which such a decree could be based. It has been repeatedly held by this court that, in a suit to reform a written instrument on the ground of mistake, the complaint must allege, distinctly, what the original understanding and agreement was, or point out with clearness and precision wherein there was a mistake, and that it did not arise from the gross negligence of the plaintiff, and the mistake must appear to have been mutual. (*Hyland* v. *Hyland*, 19 Or. 51; *Lewis* v. *Lewis*, 5 Or. 169; *Stephens* v. *Murton*, 6 Or. 193; *Ramsey* v. *Loomis*, *Id.* 367.) The complaint in this case contains no allegation, of a mistake in the mortgage, but is drawn up on the theory that there is no mistake, but an uncertain description. If we should undertake to reform this instrument under the present complaint, we would do so without any allegations to support the decree, and would be deciding a case not presented by the record. The defendants claim to be *bona fide* lien-holders, but have not so framed their answers as to avail themselves of this defense if the facts are with them. The reason assigned for this is that they, relying on the allega-

tions of the complaint, were not called upon to do so, as the complaint does not indicate a suit to reform this mortgage.

It is also claimed that the deed of the chief of police, made to the city of Portland for this property under the sale for delinquent street assessments, having been recorded more than three years prior to levy of defendants' execution, defendants are barred from enforcing their leins, by virtue of the statute of limitations. This claim is based upon section 2840, p. 1314, 2 Hill's Code, which reads as follows: "Any suit or proceeding for the recovery of land sold for taxes, except in cases where the taxes have been paid or the land redeemed, as provided by law, shall be commenced within three years from the time of recording the tax-deed of sale, and not thereafter." The contention is that this section applies to land sold for delinquent street assessments as well as to that sold for general taxes. Assuming, for the purposes of this case, that the statute of limitations will run in favor of the holder under a tax-deed against a mere lien-holder, a question we do not undertake to decide, we are of the opinion that section 2840 cannot be held to apply to sales made for delinquent street assessments. The language of the section is "land sold for taxes" and the section is a part of the general revenue system of the state. General taxes are a burden imposed upon property for the common good, and for the purpose of raising the ordinary revenues of a country, without regard to any special benefit to the owner, except such as may be anticipated from the general administration of the laws for individual protection and the general good. They are exactions from him for the purpose of either carrying on the general government or some subordinate department thereof, while special assessments, such as those made for street improvements, are founded upon the theory that a portion of the community is to be specially benefited in the enhancement of their property by reason of the contemplated expenditure of the public funds, and are therefore, in addition to the general levy, required to make special contributions for the intended im-

provements. In theory, at least, the property assessed is supposed to be benefited in an amount corresponding to the assessment, by its increased value on account of the improvement. (*Cemetery* v. *City of Buffalo*, 46 N. Y. 506; *Sharp* v. *Speir*, 4 Hill. 76; *King* v. *City of Portland*, 2 Or. 146.) There must be special legislative authority for imposing these special assessments, and land cannot be sold therefor without specific legislation for the purpose. The ordinary authority to sell land for taxes is not applicable to an assessment for street improvements, nor can the statute of limitations provided for the holder under a general tax-deed be considered applicable to such sales. (Cooley, Tax'n, 469; Blackw. Tax-Titles, § 615.)

Since there are important questions between the parties to this suit, as disclosed by this record, which cannot be litigated under the pleadings, we have concluded to dismiss the complaint without prejudice, neither party to recover costs on this appeal.