Argued October 27, reversed November 23, rehearing denied December 28, 1915.

# HYDE *v.* KIRKPATRICK.

(153 Pac. 41; 153 Pac. 488.)

**Reformation of Instruments—Mutuality of Mistake.**

1. Where plaintiff, suing to reform an instrument whereby he sold his stock of groceries, was not mistaken when making the contract about any of the terms included therein, he could not have a reformation thereof, since only mutual mistake of the parties will authorize correction of a written instrument.

[As to mistakes constituting grounds for reformation of instruments, see note in 117 Am. St. Rep. 228.]

**Reformation of Instruments—Mistake Due to Negligence.**

2. Where plaintiff's mistake, as to a term of the written contract whereby he transferred to another his stock of groceries, was the result of his own heedlessness and inattention, since, though possessed of written evidence of the data that should have been used to make up the written agreement, he neglected to avail himself of it for purposes of comparison, he could not have a reformation of the instrument.

**Reformation of Instruments—Fraud.**

3. Plaintiff, suing to reform his written conveyance of his stock of groceries claiming that through his transferee's fraud he had been mistaken about a term thereof, could have such reformation only if the transferee had made a knowingly false representation, which plaintiff believed, relied on and was deceived by, as to a matter relating to the contract, which, if true, would have been to his advantage, but, being false, caused him damage.

**Pleading—Allegations—Conclusions—Fraud.**

4. A complaint, in suit to reform an instrument for mistake of one party caused by the fraud of another which makes a mere general averment of fraud, is not good, since the facts upon which fraud is predicated must be specifically pleaded.

[As to fraud as a ground for reforming an instrument, see note in 65 Am. St. Rep. 497.]

**Contracts—Contract to Pay Debt of Another—Breach—Damage.**

5. Where the buyer of a stock of groceries agreed with the seller to pay the latter's debt to a grain company, the seller cannot sue for breach thereof unless through his payment of the debt himself, voluntarily or by compulsion, he has incurred damage.

## ON PETITION FOR REHEARING.

**Reformation of Instruments—New Contract—Power of Chancellor.**

6. Where plaintiff, by suit to reform a contract for the sale of his stock of groceries, sought to recast the agreement according to what had been paid and what remained unpaid by the defendant, while the instrument drawn in question was the reduction to writing by the

parties of the contract of sale as first orally made between them, plaintiff could not have a reformation, since the chancellor cannot make a new contract taking into consideration payments or other part performance, but can only state the agreement in the terms stipulated as of the date when the original was made.

**Reformation of Instruments—New Agreement—Power of Equity.**

7.  While, in a proper case, equity will relieve a party from a contract into which he has been inveigled by fraud, it will not construct a new agreement between the parties for such reason.

**Reformation of Instruments—Mutuality of Mistake.**

8.  Where plaintiff orally contracted to sell his stock of groceries, and the contract was later reduced to writing, being at all times in possession of the original data upon which the agreement was based, he could not have reformation of the instrument on the ground that the writing did not correctly embody the oral agreement, since there was no mutuality of mistake; it being plaintiff's duty as an independent contracting party to see that the writing correctly stated the terms of the contract.

From Baker: GUSTAV ANDERSON, Judge.

In Banc.   Statement by MR. JUSTICE BURNETT.

This is a suit by H. G. Hyde against Chauncey Kirkpatrick.

The substance of the complaint is that about January 9, 1911, the plaintiff sold to the defendant a stock of groceries, store fixtures and some active accounts due to the former in the business for which the latter agreed to pay $5,880.17; that in the transaction it was stipulated that the defendant was to pay some debts, 20 in number, to wholesale merchants owing by the plaintiff, a list of which is set out in the complaint, including one to the Oregon Mill & Grain Company of $535.62.   He says that afterward, about March 10, 1911, the defendant requested him to execute a bill of sale for the merchandise and business included in the transaction; that accordingly the parties repaired to the office of an attorney who drew up the bill of sale to correct which this suit is brought.   The allegation then proceeds as follows:

"That when the said sale was made as above alleged, on or about January 9, 1911, and when the defendant assumed and agreed to pay the wholesale accounts and creditors of the plaintiff as above alleged, there was no misunderstanding about the amounts or as to the names of the persons and firms; but the same were definitely understood, determined and agreed upon by both parties. That when the aforesaid bill of sale or contract was drawn the plaintiff had no knowledge whatever as to what wholesale accounts contained in the aforementioned list had been paid either fully or partially; and that the information given to Mr. Smith, the attorney who prepared the same, was given entirely by the defendant and that the defendant gave to him the list of persons and the amounts due of said wholesale accounts which he, the defendant, was to pay. And that at that time the defendant represented to the plaintiff and to Mr. Smith, the attorney, that any and all of the balance of said accounts mentioned in the foregoing list had been by him paid and discharged, and that of the list that the defendant had agreed to pay as hereinbefore alleged he, the defendant, had paid any and all of the remainder of said account save and except the particular accounts mentioned in said instrument. That up to said date the defendant had paid to the plaintiff in cash on account of said sale the sum of $1,050, and had executed his note and delivered to the plaintiff for the further sum of $500, and that said amounts was any and all of the cash or consideration that plaintiff had up to said time received from the defendant on account of the above alleged sale. That allowing the said $500 note as a credit in favor of defendant, on the said tenth day of March, 1911, there remained due on said sale from defendant to plaintiff the sum of $126.15, provided the defendant should pay to and discharge any and all of the obligations of plaintiff that the defendant had assumed and agreed to pay as hereinabove set out. That in supplying the information to the attorney who drew the bill of sale at said time, the defendant, either through mistake or with the intention to wrong

and defraud the plaintiff, omitted to mention to the attorney the certain of said wholesale accounts (which he had not paid), which in said instrument and by the terms thereof he agreed to pay.

"That the said instrument above referred to after the same was prepared was executed by both plaintiff and defendant, and that the following is a true and correct copy of the same:

" 'Know all men by these presents, that H. G. Hyde, party of the first part, for and in consideration of the sum of five hundred ($500) dollars to him in hand paid by Chauncey Kirkpatrick, the party of the second part, the receipt whereof is hereby acknowledged, and for the further consideration of the payment by the said party of the second part of the following wholesale accounts at or before the time the same become due, to wit: Allen and Lewis, $394.58; Baker City Grocery Company, $1,998; Clossett & Devers, $30.72; J. A. Folger & Co., $132.35; Hills Brothers, $254.53; North Powder Milling Company, $118.60; Pioneer Mill, $213.25; and Schillings, $28.20. The party of the first part does hereby grant, bargain, sell, and set over unto the party of the second part, his heirs, executors, administrators, successors, and assigns, the following described personal property, to wit: All that certain stock of goods, wares, and merchandise in storeroom now occupied by H. G. Hyde and in warehouses used in connection therewith and used in conducting a general grocery business known as H. G. Hyde's Grocery, and being situate on Center street in the city of Baker, Baker county, Oregon. To have and to hold the same unto the said party of the second part, his heirs, executors, administrators, successors, and assigns forever. And the said party of the first part, for himself, his heirs, executors, administrators, and assigns, does hereby covenant and agree to and with the said party of the second part that he is the owner and in possession of the above-described personal property, and that the same is free from all legal claims whatsoever except those above mentioned. In witness whereof, the parties hereto have hereunto set their hands and seals this 10th day of March, 1911.' "

This contract was signed by the parties. The complaint further alleges:

"That at this time the plaintiff does not know as to what amounts and what creditors contained in said list that the defendant has paid, and that it is a fact that the defendant now denies that he assumed or agreed to pay the account of the Oregon Mill & Grain Company, which on January 9, 1911, amounted to the sum of $535.62."

The pleading concludes with the prayer that the instrument executed on March 10, 1911, be reformed so as to read as follows:

"Know all men by these presents, that H. G. Hyde, party of the first part, for and in consideration of the sum of $126.15 which Chauncey Kirkpatrick, the party of the second part, hereby agrees to pay to the party of the first part, upon demand, and for the further consideration of the payment by the said party of the second part of the following wholesale accounts at or before the time the same become due, to wit, the same having been heretofore assumed and agreed to be paid by the said Chauncey Kirkpatrick, a portion of said accounts the said Chauncey Kirkpatrick representing have already been by him paid."

Then is inserted the list of 20 accounts as set out as before alleged. The remainder of the document is the same as the original.

A general demurrer to the complaint was overruled. The answer denies all the allegations about the mistake and the fraud charged, and states the defendant's understanding of the transaction in conformity with the bill of sale actually executed. Other defenses are interposed, but it is not necessary to consider them.

The reply traverses the new matter in the answer. A trial was had before the court in which a decree was entered, not only reforming the contract as prayed for,

as well as in other particulars, but also giving a judgment against the defendant for the sum of $535.62, the amount of the Oregon Mill & Grain Company's account, with interest thereon since March 10, 1911, and for costs and disbursements.   The defendant appeals.

Reversed.   Rehearing Denied.

For appellant there was a brief over the name of *Messrs. Clifford & Correll,* with an oral argument by *Mr. Morton D. Clifford.*

For respondent there was a brief and an oral argument by *Mr Woodson L. Patterson.*

Mr. Justice Burnett delivered the opinion of the court.

1. In *Hughey* v. *Smith,* 65 Or. 323 (133 Pac. 68), the rule about the correction of a mistake in a written instrument is thus declared by Mr. Justice Moore:

"The right of a court of chancery to reform or annul a written contract, the execution of which was induced by the fraud of the defendant, or resulted from the mutual mistake of both parties, is a well-recognized principle of equitable jurisprudence.   Such being the case, the only question to be considered is whether or not the complaint herein states facts sufficient to constitute a cause of suit.   The rule is settled in this state that, in a suit to reform a written instrument on the ground of misapprehension of the facts involved, the complaint must distinctly allege what the original agreement of the parties was, or point out with clearness and precision wherein there was a misunderstanding, and that such mistake was mutual and did not arise from the gross negligence of the plaintiff, or that his misconception originated in the fraud of the defendant: *Evarts* v. *Steger,* 5 Or. 147; *Lewis* v. *Lewis,* 5 Or. 169; *Stephens* v. *Murton,* 6 Or. 193; *McCoy* v. *Bayley,* 8 Or. 196; *Foster* v. *Schmeer,* 15 Or. 363 (15

Pac. 626); *Hyland* v. *Hyland,* 19 Or. 51 (23 Pac. 811);
*Meier* v. *Kelly,* 20 Or. 86 (25 Pac. 73); *Epstein* v. *State
Ins. Co.,* 21 Or. 179 (27 Pac. 1045); *Kleinsorge* v.
*Rohse,* 25 Or. 51 (34 Pac. 874); *Osborn* v. *Ketchum,* 25
Or. 352 (35 Pac. 972); *Thornton* v. *Krimbel,* 28 Or. 271
(42 Pac. 995); *Mitchell* v. *Holman,* 30 Or. 280 (47 Pac.
616); *Sellwood* v. *Henneman,* 36 Or. 575 (60 Pac. 12);
*Stein* v. *Phillips,* 47 Or. 545 (84 Pac. 793); *Bower* v.
*Bowser,* 49 Or. 182 (88 Pac. 1104); *Smith* v. *Interior
Warehouse Co.,* 51 Or. 578 (94 Pac. 508 (95 Pac. 499);
*Howard* v. *Tettelbaum,* 61 Or. 144 (120 Pac. 373).''

The plaintiff does not assert that he himself was
mistaken about any of the terms to be included within
the contract. It is true that he pleads that he was ig-
norant of whether the defendant had paid any of the
accounts at the time the instrument was executed, but,
as avowed in his brief, the object of the negotiation in
March was to prepare a written memorial of the stip-
ulation orally made in January, and not to make any
new contract. In that view of the matter the repre-
sentations of the defendant about his payments of ac-
counts would have nothing to do with the case. They
would not affect the plaintiff's knowledge of the trans-
action that occurred in March. In brief, while the
complaint imputes mistake to the defendant in the al-
ternative with an intent to defraud, it does not aver
any mistake on the part of the plaintiff. It is only a
mutual mistake of the parties that will authorize a
correction of a written instrument within the rule of
*Hughey* v. *Smith,* 65 Or. 323 (133 Pac. 68).

2. Moreover, there is nothing to show the court that
the action of the plaintiff in signing the bill of sale did
not arise from his pure heedlessness and inattention to
his own interests, and this is condemned by the prece-
dent last cited. Besides all this, as a matter of evi-
dence, it is without dispute that at the time of the Jan-

uary transaction both parties made an inventory of the stock of goods and of the fixtures involved, together with a schedule of the accounts due the plaintiff which the defendant took over, and a list of the wholesale accounts against the plaintiff which the defendant was to assume. All these were preserved by each party, and at the time of the execution of the instrument in question the plaintiff had his set of those papers in his possession. Possessed of written evidence of the data that should have been used to make up the written agreement he utterly neglected to avail himself of it so that the conclusion of his negligence is inevitable.

3, 4. Neither is the complaint sufficient to reform the instrument on the ground of fraud perpetrated by the defendant. In *Anderson* v. *Adams,* 43 Or. 621 (74 Pac. 215, 217), Mr. Chief Justice MOORE stated the principle thus:

"To constitute a fraud by false representations, so as to entitle the plaintiff to relief, three things must occur: (1) There must be a knowingly false representation; (2) the plaintiff must have believed it to be true, relied thereon, and have been deceived thereby; and (3) that such representation was of matter relating to the contract about which the representation was made, which, if true, would have been to plaintiff's advantage, but, being false, caused him damage and injury."

See, also, *McFarland* v. *Carlsbad Sanatorium Co.,* 68 Or. 530 (137 Pac. 209, Ann. Cas. 1915C, 555). It is quite as forcibly enunciated in *Leavengood* v. *McGee,* 50 Or. 233, 239 (91 Pac. 453):

"The rule is that the facts upon which fraud is predicated must be specifically pleaded. A mere general averment of fraud is nothing but the averment of a conclusion, and will not suffice. It presents no issue for trial, and is bad on demurrer. Such an averment

not only renders the bill or complaint demurrable, but it will not even sustain a decree.''

Tested by these standard precedents the complaint does not sufficiently charge fraud upon the defendant. It is said in the pleading that the defendant ''omitted to mention to the attorney the certain of said wholesale accounts (which he had not paid) which in said instrument and by the terms thereof he agreed to pay.'' It is impossible to understand how the defendant could omit from the instrument accounts which by the terms of the very paper itself he promised to pay. It was error to overrule the general demurrer.

5. As already stated, the court not only corrected the instrument by inserting an entirely different consideration and a list of 20 accounts stating that some of them had already been paid, but also gave judgment against the defendant for the amount of the Oregon Mill & Grain Company's account of $535.62. *Semble,* if the defendant agreed with the plaintiff to pay the latter's debt to the Mill & Grain Company and did not keep his promise, it would be a breach of the contract for which an action of damages would lie if the plaintiff in fact were damaged. But unless the plaintiff had paid the debt himself, either voluntarily or by compulsion, he could not be injured. The complaint is utterly silent on this subject, and it is believed that nothing is alleged authorizing the court to award the plaintiff judgment for damages for a breach of the contract. The defect of the complaint as against a general demurrer obviates the necessity for a detailed analysis of the testimony of which it is enough to say it is confusing and unsatisfactory.

The decree of the Circuit Court is reversed and the suit is dismissed.     Reversed and Suit Dismissed.

Rehearing Denied.

Denied December 28, 1915.

ON PETITION FOR REHEARING.

(153 Pac. 488.)

MR. JUSTICE BURNETT delivered the opinion of the court.

6. The plaintiff has filed a petition for rehearing in which he restates with ability and zeal the arguments pressed upon our attention when the case was heard on appeal. Its incongruity is made manifest when we remember that on March 10, 1911, when the parties made the instrument drawn in question, they were endeavoring to reduce to writing the contract of sale orally made in the next preceding January, while the present litigation is an attempt to recast the agreement according to what had been paid and what remained unpaid by the defendant and compel him to perform the new contract. The utmost a chancellor can do in the way of correcting a mistake is to state the agreement in the terms stipulated as of the date when the original was made. He cannot make a new contract taking into consideration payments or other part performance.

7, 8. Another principle equally plain is that, while in a properly stated case equity will relieve a party from a convention into which he has been inveigled by fraud, it will never construct a new agreement upon such a basis. As pointed out in the former opinion, whether in the interim between January and March the defendant had or had not paid some or all of the accounts due from the plaintiff could not affect the terms of the original transaction in the former month which the parties subsequently attempted to reduce to writing. The plaintiff had in possession at all times all the

original data upon which the agreement was based for the transfer of the business, and it was his duty as an independent contracting party to see that the writing correctly stated the terms of the contract; for, under such circumstances, courts cannot make or unmake agreements. The complaint fails to show mutuality of mistake so essential to the exercise of that branch of equity jurisprudence. It presents no allegation justifying a rescission of the sale on the ground of fraud. Finally, under the guise of correcting a mistake, it attempts to frame a new contract materially different in terms from even what the plaintiff says was the original agreement made in January. For all these reasons the plaintiff has not stated a case for equitable relief. Something is said in the petition about an error in the opinion in statement of an allegation of the complaint. Confessedly the opinion on that point conformed to the printed abstract upon which we heard the cause and to which the plaintiff did not object. It must be admitted that, if the abstract had shown the complaint, as plaintiff's counsel says it was amended, by interlineation, the comment referred to would not have appeared in the decision; but, as it was not necessary to the result, it requires no further notice.

The petition for rehearing is denied.

Reversed. Suit Dismissed. Rehearing Denied.