Argued April 11, reversed and suit dismissed April 17, 1917.

# BOARDMAN v. INSURANCE CO. OF STATE OF PENNSYLVANIA.*

### (164 Pac. 558.)

**Reformation of Instruments—Complaint.**

1. In action to reform an instrument, the complaint must distinctly allege what the original agreement of the parties was, and clearly and precisely point out wherein there was a misunderstanding, that the mistake was mutual and did not arise from the gross negligence of the plaintiff, or that his misconception originated in the fraud of the defendant.

**Reformation of Instruments—Mutuality of Mistake.**

2. That an instrument does not express the intent of one of the parties, but does conform to that of the other, does not warrant its reformation, since a contrary rule would destroy the principle of mutuality of contract.

**Reformation of Instruments—Evidence—Sufficiency.**

3. In an action for reformation of an instrument, the testimony as to the real contract intended between parties must be clear and convincing, and, if it is at an equal balance either as to what the agreement was or as to the mutuality of the mistake, reformation will not be allowed.

**Reformation of Instruments — Evidence — Sufficiency — Insurance Policy.**

4. In suit to reform and recover upon an insurance policy, evidence *held* not sufficient to show mistake by the insurance company in writing the policy.

**Reformation of Instruments—Grounds—Waiver of Policy Conditions.**

5. In suit to reform an insurance policy, waiver of the conditions of the policy as to change of ownership by failure of the company to inquire about the ownership was not available; such ground of recovery being available only in an action at law on the policy.

[As to causes and proceedings for reformation of instruments, see note in 65 **Am. St. Rep.** 481.]

**Insurance—Conditions—Waiver.**

6. Under Standard Policy Law (Title XXXIV, Chapter 6, L. O. L.), Sections 4666, 4668, as amended by Laws of 1911, page 279, the statutory conditions as to ownership of insured property cannot be waived except in the manner provided in statute itself, which must be in writing attached to or upon the face of the policy.

\*On reformation of insurance policy for mistake of soliciting agent, see note in 11 **L. R. A. (N. S.)** 357.                                    REPORTER.

From Multnomah: GEORGE N. DAVIS, Judge.

Suit by E. C. Boardman and S. Bartle, comprising the partnership firm of Boardman & Bartle, against the Insurance Company of the State of Pennsylvania, Theodore Trautman and R. C. Allen, to reform an insurance policy. There was a decree for plaintiffs and defendant insurance company appeals. Reversed. Suit Dismissed.

Department 1.   Statement by MR. JUSTICE BURNETT.

This is a suit by the partnership of Boardman & Bartle to correct an alleged mistake in an insurance policy issued by the defendant company so as to strike out the words "Boardman & Miller" and insert therein "Boardman & Bartle" as the name of the insured firm. The complaint asserts substantially that on or about December 18, 1914, the defendant with full knowledge that plaintiffs were in possession of and claimed to be the owners of the property described, issued a policy in the name of Boardman & Miller, whereas the intention of all concerned was to insure Boardman & Bartle and that this was a mutual mistake and inadvertence of both parties. They further declare upon the policy as sought to be reformed in a way to recover the amount specified therein for the loss of the property by fire occurring August 3, 1915, within the period for which the insurance was to be effective.

The answer traverses most of the allegations of the complaint and especially the averment of mistake. It charges that the policy was issued on or about November 27, 1914, at which time the chattels were owned by the plaintiff Boardman and one Miller under the firm name and style of Boardman & Miller; that at that time neither Bartle nor the firm of Boardman & Bartle

·had any interest therein and that the defendant intended to and did issue and deliver the policy to Boardman & Miller designing only to insure their interests. It then recites that the policy provided that it should be entirely void unless otherwise provided by agreement indorsed thereon or added thereto, "if the interest of the insured be other than unconditional and sole ownership, or if any change, other than by the death of an insured, take place in the interest, title or possession of the subject of insurance"; that about December 18, 1914, the partnership of Boardman & Miller was dissolved by the defendant Bartle purchasing and succeeding to the ownership of Miller in the insured property; and that no agreement providing for any change in the interest of the insured in or to the property or for any change in the interest, title or possession of the subject of insurance, was ever made by or on behalf of the defendant, or indorsed or added to said policy of insurance.

The reply traverses the new matter in the answer and states in substance that neither the plaintiffs nor Miller ever made any application for insurance, nor did the defendant make any inquiries as to the ownership of the articles insured, but received the premium, well knowing that the plaintiffs were in possession of and owners of them and led the plaintiffs to believe that the property and their interests therein were insured and thereby waived the condition of the policy as to ownership and all objections, rights, and privileges thereunder or arising therefrom. A further defense not necessary to be considered here relates to a garnishment of the defendant company by creditors of Bartle seeking to satisfy their claims out of insurance money due him. The court decreed a reformation of the policy as prayed for by the plaintiffs, together with a recovery from the company of $2,000, the

face of the policy, and ordered that out of it certain sums should be paid to the other defendants in settlement of demands against the firm and Bartle. The company appealed.     REVERSED.   SUIT DISMISSED.

For appellant there was a brief over the name of *Messrs. Veazie, McCourt & Veazie,* with an oral argument by *Mr. J. Clarence Veazie.*

For respondents there was a brief and an oral argument by *Mr. Wilson T. Hume.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. The vital question to be determined is whether a mistake has been shown in the framing of the policy within the meaning of the law so as to justify its amendment according to the prayer of the plaintiffs. The precept on the subject of correction of an instrument for a mistake is firmly implanted in the jurisprudence of this state to the effect that the complaint must distinctly allege what the original agreement of the parties was, and point out with clearness and precision wherein there was a misunderstanding; that such mistake was mutual and did not arise from the gross negligence of the plaintiff or that his misconception originated in the fraud of the defendant: *Evarts* v. *Steger,* 5 Or. 147; *Lewis* v. *Lewis,* 5 Or. 169; *Stephens* v. *Murton,* 6 Or. 193; *McCoy* v. *Bayley,* 8 Or. 196; *Foster* v. *Schmeer,* 15 Or. 363 (15 Pac. 626); *Hyland* v. *Hyland,* 19 Or. 51 (23 Pac. 811); *Meier* v. *Kelly,* 20 Or. 86 (25 Pac. 73); *Epstein* v. *State Ins. Co.,* 21 Or. 179 (27 Pac. 1045); *Kleinsorge* v. *Rohse,* 25 Or. 51 (34 Pac. 874); *Osborn* v. *Ketchum,* 25 Or. 352 (35 Pac. 972); *Thornton* v. *Krimbel,* 28 Or. 271 (42 Pac. 995); *Mitchell* v. *Holman,* 30 Or. 280 (47 Pac. 616);

*Sellwood* v. *Henneman,* 36 Or. 575 (60 Pac. 12) ; *Stein* v. *Phillips,* 47 Or. 545 (84 Pac. 793) ; *Bower* v. *Bowser,* 49 Or. 182 (88 Pac. 1104) ; *Smith* v. *Interior Warehouse Co.,* 51 Or. 578 (94 Pac. 508, 95 Pac. 499) ; *Howard* v. *Tettelbaum,* 61 Or. 144 (120 Pac. 373) ; *Suksdorf* v. *Spokane, P. & S. Ry. Co.,* 72 Or. 398 (143 Pac. 1104) ; *Hyde* v. *Kirkpatrick,* 78 Or. 466 (153 Pac. 41, 488).

2. Having in mind the necessity of alleging and proving, as well, that the mistake was mutual, it is not sufficient to reform an instrument if it is shown that it does not express the intent of one of the parties but does conform to that of the other. In every contract there must be the *aggregatio mentium,* or meeting of minds, of all the contracting persons. This principle would be utterly destroyed if the court should undertake to correct what was a mistake of only one of the participants in the agreement.

It becomes necessary, therefore, to inquire into the evidence in the instant case to determine whether there was a mutual mistake. The property described in the policy consisted of billiard-tables with their equipment and other personalty in a billiard-room and cigar-stand in a building in Portland, Oregon. It was subject to two chattel mortgages held by the defendant Trautman said to have been given to him by Phillip S. Miller and the plaintiff Boardman under the firm name of Boardman & Miller. It had been insured for the benefit of Trautman as mortgagee and the firm of Boardman & Miller as owners by a policy of the defendant company expiring December 18, 1914. The testimony is to the effect that on the evening of December 17, 1914, the plaintiff Bartle and Miller finished negotiations with each other for the sale to the former by the latter of his interest in the property and business. On the following day they executed a written

instrument transferring the title from Miller to Bartle and in payment of the purchase price the latter gave his check of that date which was cashed two or three days afterwards. Mr. Burgard, the agent of the defendant company, who transacted all the business on its behalf, testifies that he wrote up the policy in question November 27, 1914, it being the date thereof, and delivered it to Boardman three or four days later. There is no dispute about the date the policy was actually written. The only witness who testifies for the plaintiffs about its actual delivery was the plaintiff Boardman. Referring to Burgard, counsel for plaintiffs asked Boardman: "When did he give you that policy?" The witness answered: "It was about the 18th of December, I think the 18th." This is a literal quotation of all the testimony for the plaintiffs as to the date of the actual delivery of the policy. The plaintiff Bartle declares that he never saw it until after the fire; that the first he learned that the property was insured was two or three days after he took possession; and that he did not know Burgard.

Opposed to the testimony of Boardman as to the date of delivery is that of Burgard, who says he wrote the policy November 27, 1914, and delivered it three or four days later, as stated. The presumption is that the writing is truly dated: Section 799, subd. 23, L. O. L. In addition to this, Burgard testifies to a conversation he had with Boardman at the time he delivered the policy respecting the renewal of the previous one, which would expire December 18th. The witness says in substance that Boardman at first demurred to renewing it because he had a customer of the place who had solicited the insurance, but upon finding that Burgard's firm was agent for the building

84 Or.—5

he concluded it would be a good thing to stand in with the agent under the circumstances and accepted the policy and stated that he would put it in the safe and undoubtedly in a few days Mr. Trautman would come and get it. This conversation is not denied by Boardman. Boardman also testifies that he did not read the policy but two or three days later surrendered it to Trautman, the mortgagee, whose interest was protected by it. The detailed account given by Burgard of the interview which took place when the policy was handed to Boardman which the latter does not challenge, contrasted with the bald statement of Boardman to the effect that he thinks it was about the 18th that he received the instrument operates strongly to turn the scale in favor of the defendant company. Boardman further says that two days after the fire, which happened on the night of August 2–3, 1915, Mr. Trautman told him the policy was made in favor of Boardman & Miller instead of Boardman & Bartle; yet there is in the record a letter dated August 7, 1915, addressed to the company notifying it of the fire destroying the property which Boardman with his own hand signed by the firm name of Boardman & Miller. He declares on cross-examination that he knew that the partnership of Boardman & Miller had ceased to exist when he wrote the letter. When he was asked: "You knew at that time all you know now about the circumstances of the issuance of that policy?" he answered, "I didn't know whether it made any difference or not." Burgard says he knew from the former policy that Miller had an interest and that he intended to insure Boardman & Miller. He testifies that the previous policy expired December 18, 1914; that it had not been originally issued to Boardman & Miller but was transferred to them afterwards. As to his intention about

whom he insured the following extract from his testimony on cross-examination is given:

"Q. Whose property did you intend to insure the 18th day of December, the owners or somebody else?

"A. Boardman & Miller.

"Q. You intended to insure, Mr. Burgard, the people who owned the property?

"A. Boardman & Miller, yes, sir.

"Q. You intended to insure the people who owned the property?

"A. Yes, sir.

"Q. If Boardman & Miller didn't own the property you didn't intend to insure the property?

"A. If they didn't own it and we knew they didn't, no, sir.

"Q. How would you learn whether they did or did not?

"A. We naturally would be advised if Mr. Miller sold out.

"Q. Don't you make an inquiry when you issue a new policy, don't you make an inquiry as to who owned the property?

"A. No, sir, not necessary on a renewal.

"Q. This was not a renewal of Boardman & Miller?

"A. Yes, sir.

"Q. You claim there was an assignment to Miller?

"A. Yes, sir.

"Q. Where is that assignment?

"A. On the old policy.

"Q. Where is that old policy?

"A. I don't know whether Mr. Boardman or Mr. Trautman has it, it would be in the hands of some of the interested parties."

There is nothing to contradict Burgard's statement on oath that the policy was written November 27, 1914, which is supported by the presumption above noted that the writing was truly dated. The fact that Boardman signed the notice with the firm name of Boardman & Miller when he knew the actual form of the pol-

icy from Trautman's previous statement to him, impairs the weight of his testimony. He was evidently proceeding at that time on the theory that the instrument was correct and was trying to collect on it as originally written.

If we contemplate the transaction as of the date that the document was actually framed it is plain that neither party to it had either Boardman as a single individual or his new firm in contemplation because that was long before the property changed hands from the old concern to the new. If we judge it as of December 18th, and concede that the paper was not actually delivered to Boardman until that date, still there is nothing in the testimony showing that the defendant or any of its agents knew anything about Bartle or his new firm. It is manifest that when Burgard wrote the policy on November 27th, he had no intention to contract with Bartle because he knew nothing about him. There is no pretense in the testimony that anything occurred to change this situation so far as the company was concerned for Bartle himself says he did not know Burgard and never saw the policy until after the fire. Hence there could not be any mutuality of mistake. The allegation of the complaint to the effect that the defendant company had full knowledge that the plaintiffs were in possession of and claimed to be the owners of the property is utterly without proof to sustain it. Moreover, it is highly probable that if, indeed, the policy was not delivered to Boardman until the 18th, the first day of the existence of the new firm, he would have called the attention of his new partner to the transaction at that time.

3, 4. The probability as a matter of weight of testimony, is that Burgard delivered the policy to Boardman about the first of December while the old firm was

yet in being and before the new one was contemplated by even its members, much less by the defendant. Under such circumstances it is a principle that the testimony as to the real contract intended by the parties must be clear and convincing and that if it is at an equal balance either as to what the agreement was or as to whether the mistake was mutual, the correction desired by the plaintiffs will not be allowed. Even if we impute to Boardman and Burgard equal credibility as witnesses, the scale is at a balance and there is a lack of that clear and convincing evidence demanded by the authorities. But, as we have seen, the testimony of Boardman is weakened by the fact that he treated the policy as having been properly written in the name of the old firm when he notified the company of the fire and signed thereto the name of Boardman & Miller. It is also depreciated by Burgard's narration of the conversation occurring when he delivered the policy to Boardman, which talk the latter does not deny. The element of mutuality in the alleged mistake is not established by even a preponderance of the testimony. Fraud is not imputed to the defendant and it was expressly disclaimed at the argument.

5, 6. Something was said at the hearing about the failure of the company to inquire about the ownership of the property being a waiver of that condition of the policy. Conceding but not deciding that waiver was properly pleaded, yet under such circumstances, the plaintiffs would have a plain, speedy, and adequate remedy at law upon the policy, coupled with an allegation that with the knowledge of all the facts the defendant dispensed with that condition about the title to the chattels. This would defeat a suit in equity under well-known principles. Such precedents as *Allesina* v. *London Ins. Co.,* 45 Or. 441 (76 Pac. 392,

2 Ann. Cas. 284), and *Arthur* v. *Palatine Ins. Co.*, 35
Or. 27, 31 (57 Pac. 62, 76 Am. St. Rep: 450), teaching
the doctrine of waiver under such circumstances, were
cited in support of the argument on that question on
behalf of the plaintiffs.    Those cases were decided be-
fore the enactment of the standard policy law em-
bodied in Chapter VI, Title XXXIV, L. O. L., as
amended by the act of February 23, 1911, Laws 1911,
p. 279.    As construed by this court in *Oatman* v. *Bank-
ers' Fire Relief Assn.*, 66 Or. 388 (133 Pac. 1183, 134
Pac. 1033), and *Finlon* v. *National Union Fire Ins. Co.*,
65 Or. 493 (132 Pac. 712), the statutory conditions can-
not be waived except in the manner provided in the
statute itself which must be in writing attached to or
upon the face of the policy.    The enactment men-
tioned gives the provisions of the policy the force of
law, under penalty, for it is made a misdemeanor for
an insurance company, its officers or agents, to deliver
a policy of fire insurance on property in the state ex-
cept as prescribed in this legislation.    Both parties to
a policy must be held to know the law.    The Allesina
Case and others like it lose their importance and are
not applicable to policies issued since the passage of
the law.    If the condition as to ownership of the prop-
erty had been waived it could be evidenced only by writ-
ing conforming to the legal requirement, in which event
the remedy at law would have been ample were the case
properly pleaded.    The essence of the present conten-
tion, however, is that a mutual mistake happened call-
ing for a reformation of the instrument, but it has not
been established.    The testimony strongly points to
the conclusion that the policy was in effect at the time
the property changed hands, true enough for a period
yet to begin, as it properly might have been stipulated;

but that owing to the inadvertence of the members of the firm the transfer of the insurance was not effected until it was too late. The result is that the decree of the Circuit Court is reversed and one here entered dismissing the suit.        REVERSED.   SUIT DISMISSED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BENSON and MR. JUSTICE HARRIS concur.