Argued October 3, affirmed October 21, 1919.

# PENINSULA LUM. CO. *v.* ROYAL INDEM-NITY CO.

### (184 Pac. 562.)

**Reformation of Instruments—Burden of Proof on Plaintiff to Prove Mistake.**

1. In action to correct alleged mutual mistake in indemnity policy, plaintiff has burden of proving the mistake by a preponderance of evidence.

**Reformation of Instruments—Complaint Must Allege Original Agreement and Point Out Mutual Mistake.**

2. In suits to reform a written instrument on the ground of mistake, the complaint must clearly state what the original agreement of the parties was, and point out with precision wherein there was a misunderstanding, that the mistake was mutual and did not arise from the gross negligence of the plaintiff, or that the misconception originated in the fraud of the defendant.

**Insurance—Application for Liability Policy Presumably for Ordinary Policy.**

3. Where application was made for employer's liability policy without going into any details as to the conditions to be placed in the policy, it will be presumed that the ordinary form of policy was to be used.

**Reformation of Instruments—Evidence Insufficient to Show Mutual Mistake.**

4. In action to correct employer's liability policy upon ground that words "No exceptions" had by mistake been placed after printed statement that no such insurance had "been canceled or the renewal thereof refused, except as follows," evidence *held* to preponderate against the claim that the mistake was mutual.

**Insurance—Statement as to Other Insurance Construed as Absolute.**

5. Insured's statement that no insurance of specified kinds "has been declined, nor has any such insurance been canceled or the renewal thereof refused, except as follows," if followed by no exception, must be taken to be absolute, since it is incumbent upon insured to qualify statement if there is an exception, the exception being presumably within his knowledge, and the legal effect of such unqualified statement, where exception is within knowledge of insured, but unknown to insurer, being same as if words "no exception" followed.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Department 1.

This is a suit by the insured to correct an alleged mistake in an indemnity policy issued by the defend-

ant.   The plaintiff was engaged in the manufacture of lumber and took the insurance to save it harmless against damages it might be compelled to pay to employees injured in its service.   The policy was issued in consideration of a money premium deposited and, as worded in the instrument, "of the statements contained in the schedule indorsed hereon, which statements the insured by the acceptance of this policy warrants to be true and which are hereby made part hereof."   The twelfth of these statements recites several kinds of insurance, among others, "workmen's compensation and employers' liability," and declares that none of such insurance is carried.   As appears on the policy, statement No. 13 is printed in this language:

"No insurance of the kinds specified in Statement 12 proposed by or on behalf of the Insured has been declined, nor has any such insurance been canceled or the renewal thereof refused, except as follows."

Following this in typewriting are the words, "No exceptions."

The plaintiff avers:

"That the insertion of said words 'No exceptions,' in Number 13 of the Schedule of Statements, was made by the scrivener or copyist who was employed by defendant's said agent, Gerlinger-Richards Co., and who wrote said policy, by mistake, and was not inserted at the instigation of either the plaintiff or defendant. That said statement was never made by plaintiff, or by anyone on its behalf, or by its authority, or with its knowledge, or consent, and constituted no part of said contract of insurance between the parties.   That the error in the insertion of said words 'No exceptions' in said Schedule 13, as aforesaid, was not noticed by plaintiff when said policy was delivered to it, nor until the defendant attempted to repudiate liability thereon, as hereinafter stated."

Other allegations of the complaint are designed to support a recovery on the policy as reformed and are not important to the consideration of the case on the issue of mistake. The prayer is that the words "no exceptions" be stricken out, and otherwise for a recovery on the policy. The quoted allegation of the complaint, with others, is denied, but the issuance of the policy in the form stated is admitted. It also appears by the pleadings that a previous insurance in favor of the plaintiff on the same risk coming within the description in statement No. 12 had been canceled just prior to the issuance of the policy in suit and that no disclosure respecting the same was made to the defendant by or on behalf of the plaintiff.

In substance, the answer is that the plaintiff applied to the defendant for the policy of insurance and it was agreed by them that the defendant would issue and the plaintiff would accept the defendant's ordinary form of such insurance and that in pursuance thereof the policy was issued in the form stated in the complaint. This in turn was denied by the reply.

The court made findings of fact and conclusions of law in favor of the defendant and dismissed the suit, from which decree the plaintiff appeals.

AFFIRMED.

For appellant there was a brief over the names of *Mr. R. Sleight* and *Mr. James B. Kerr,* with an oral argument by *Mr. Sleight.*

For respondent there was a brief over the names of *Mr. H. B. M. Miller, Messrs. Wilbur, Spencer & Beckett* and *Mr. James A. Watt,* with oral arguments by *Mr. R. W. Wilbur* and *Mr. Miller.*

BURNETT, J.—1. In effect, the plaintiff alleges a mutual mistake in the writing and the defendant denies this.  As this is the issue, it is incumbent upon the plaintiff to prove the affirmative of the same by a preponderance of the evidence.  Without dispute, it clearly appears that a former policy of the same nature, issued to the plaintiff by another company on the same risk, had been canceled, all within the knowledge of the plaintiff, and that nothing was said by its representatives to those of the defendant about this during the negotiations for the policy in suit.  The instrument was written by a stenographer in the office of the agents of the defendant, under the direction of and from memoranda written by the man having charge of that particular kind of insurance.  He testifies to the effect that he took the ordinary printed blank policy customarily used by the defendant in such business and designedly and purposely caused to be put into the blank after the thirteenth statement the words "no exceptions"; that he wrote them in the memoranda furnished to the stenographer and that the latter followed them according to his directions. The substance of the testimony of the witnesses for the plaintiff is that nothing was said about previously canceled insurance.  The then secretary of the plaintiff, who appears to have conducted the negotiations in the main on behalf of the company, testifies thus:

"Q. As a matter of fact, this policy involved in this action was issued to you because you wanted it, was it not?

"A. Oh, yes, we wanted the policy.

"Q. And you made application to the proper person to get it, did you not?

"A. We gave them a chance to figure on the business; yes, sir.

"Q. And at the time of the issuance of the policy I suppose you told them what you wanted was employers' liability insurance?

"A. I think I did; yes.

"Q. And the nature of the property that you had?

"A. I don't think I went into details. They were familiar with it themselves.

"Q. You didn't go into any of the details at all as to any of the conditions that should be placed in the policy?

"A. I did not.

"Q. You knew that the company to whom this application was made was a company that was issuing policies of that kind?

"A. Yes, sir.

"Q. And you simply made application that a policy —an employer's liability policy—be issued to you covering your plant, without going into any details at all as to any of the conditions or statements provided in the policy?

"A. I did."

In connection with this testimony, it is thus laid down as a rule in *Cleveland Oil Co.* v. *Norwich Insurance Society,* 34 Or. 228 (55 Pac. 435), in an opinion by Mr. Justice MOORE:

"So, too, the law will presume that the minds of the parties met upon an agreement containing the terms and conditions of a policy such as is usually issued by the contracting insurance company covering like risks: 1 May on Insurance (3 ed.), § 23; *Barre* v. *Council Bluffs Ins. Co.,* 76 Iowa, 609 (41 N. W. 373); *Smith* v. *State Ins. Co.,* 64 Iowa, 716 (21 N. W. 145); *Hubbard* v. *Hartford Ins. Co.,* 33 Iowa, 325 (11 Am. Rep. 125); *De Grove* v. *Metropolitan Ins. Co.,* 61 N. Y. 594 (19 Am. Rep. 305); *Eureka Ins. Co.* v. *Robinson,* 56 Pa. St. 256 (94 Am. Dec. 65); *Fuller* v. *Insurance Co.,* 36 Wis. 599; *Salisbury* v. *Hekla Ins. Co.,* 32 Minn. 458 (21 N. W. 552)."

2. In this state the precept is thoroughly established and of long standing that in suits to reform a written instrument on the ground of mistake the complaint must clearly state what the original agreement of the parties was, and point out with precision wherein there was a misunderstanding; that the mistake was mutual and did not arise from the gross negligence of the plaintiff, or that the misconception originated in the fraud of the defendant: *Boardman* v. *Insurance Company of Pennsylvania,* 84 Or. 60 (164 Pac. 558); *Evarts* v. *Steger,* 5 Or. 147; *Lewis* v. *Lewis,* 5 Or. 169; *Stephens* v. *Murton,* 6 Or. 193; *McCoy* v. *Bayley,* 8 Or. 196; *Foster* v. *Schmeer,* 15 Or. 363 (15 Pac. 626); *Hyland* v. *Hyland,* 19 Or. 51 (23 Pac. 811); *Meier* v. *Kelly,* 20 Or. 86 (25 Pac. 73); *Epstein* v. *State Ins. Co.,* 21 Or. 179 (27 Pac. 1045); *Kleinsorge* v. *Rohse,* 25 Or. 51 (34 Pac. 874); *Osborn* v. *Ketchum,* 25 Or. 352 (35 Pac. 972); *Thornton* v. *Krimbel,* 28 Or. 271 (42 Pac. 995); *Mitchell* v. *Holman,* 30 Or. 280 (47 Pac. 616); *Sellwood* v. *Henneman,* 36 Or. 575 (60 Pac. 12); *Stein* v. *Phillips,* 47 Or. 545 (84 Pac. 793); *Bower* v. *Bowser,* 49 Or. 182 (88 Pac. 1104); *Smith* v. *Interior Warehouse Co.,* 51 Or. 578 (94 Pac. 508, 95 Pac. 499); *Howard* v. *Tettelbaum,* 61 Or. 144 (120 Pac. 373); *Suksdorf* v. *Spokane, P. & S. Ry. Co.,* 72 Or. 398 (143 Pac. 1104); *Hyde* v. *Kirkpatrick,* 78 Or. 466 (153 Pac. 41, 488).

3, 4. In a sense, stating an account of the evidence, we have for the plaintiff the statement that nothing was said about the existence or cancellation of previous insurance of the kind in contemplation. On behalf of the defendant there is the testimony of its agent that he designedly inserted the words "no exceptions," which the plaintiff would elide, and that the policy was

the one in ordinary use by the defendant company for such risks. Added to this on behalf of the defendant is the testimony of the plaintiff's secretary, already quoted, giving rise to the presumption as a piece of evidence in favor of the defendant, that the ordinary form of policy was to be used. In our judgment, the positive testimony on behalf of the defendant, coupled with the presumption already quoted, constitutes a preponderance of the testimony against the mutuality of the mistake so necessary to be shown if any correction should be made in the document.

5. We note also that the only change the plaintiff seeks is to strike out the typewritten words, "no exceptions." By the terms of the policy these numbered statements are imputed to the applicant for insurance, for at the outset in the instrument it is said to have been issued in consideration of the money premium and of the statements contained in the schedule which the insured warrants to be true. The statement as printed was that:

"No insurance of the kinds specified in Statement 12 proposed by or on behalf of the Insured has been declined, nor has any such insurance been canceled or the renewal thereof refused, except as follows."

If no exception followed, this statement must be taken to be absolute and, being a warranty, must be strictly true as stated: *Buford* v. *New York Life Ins. Co.,* 5 Or. 334. If the party making this absolute statement would qualify it by an exception, it is incumbent upon him to state the exception, because it is presumably within his knowledge. In this instance the testimony shows that the exception was within the knowledge of the assured but was unknown to the insurer. Consequently, it is immaterial whether or not

the words "no exceptions" be stricken from the policy, because the legal effect of the clause is the same whether the two words in question be retained or discarded.

But aside from this possibly technical ground, the weight of the testimony is in favor of the proposition that the alleged mistake was not mutual, and that the most which can be said of the situation is that the plaintiff did not notice that provision in the policy while the defendant designedly inserted the words complained of and purposely used the form of policy employed. To reform the policy so as to make its legal effect different from what it appears on its face under the circumstances would be to make a new contract for the parties contrary to the understanding of at least one of them. The testimony on behalf of the plaintiff falls short of pointing out with clearness what the original agreement of the parties was. It only states in substance that the words "no exceptions" were not to be put into the contract and that nothing was said about previous insurance. What, if anything, in the main, was to be affirmatively stated as the binding agreement between the parties is left to conjecture. But, above all, the preponderance reveals that the mistake, if any, was not mutual. The result is that the decree of the Circuit Court must be affirmed.

AFFIRMED.

McBRIDE, C. J., and BENSON and HARRIS, JJ., concur.